[No. 3,472.]

# IN THE MATTER OF THE ESTATE OF HERMAN SCHROEDER, DECEASED.

CONTESTING PROBATE SALE OF REAL ESTATE. — One who does not claim any interest in real estate cannot contest an order of the Probate Court directing it to be sold to pay the debts of the estate.

IDEM.—The question not decided whether a person who, after the death of the testator, has bought real estate left by him from the devisee, can contest an order of the Probate Court directing the sale of the same to pay the debts of the estate, so long as he holds possession of it adversely to the administrator, and refuses to account for the rents and profits.

FILING CLAIMS AGAINST ESTATES IN PROBATE COURT. — The sections of the Probate Act requiring judgments against administrators, and claims against the estate which have been allowed, to be filed in the Probate Court, are merely directory.

AMENDMENT TO JUDGMENT. — If a personal judgment is rendered against an administrator, and it appears by the record that the judgment should have been made payable in due course of administration, the Court may direct the judgment to be amended so as to make it correct, even after the adjournment of the term.

COURT MAY CORRECT ERRORS AFTER THE TERM.—The Court has power
to correct clerical errors and misprisions, even after the expiration of the
term.

STATUTE OF LIMITATIONS AS TO CLAIMS AGAINST ESTATE.—The Statute
of Limitations does not run, while the administration is pending and un-
settled, as to a claim against an estate which has been allowed, nor as to a
judgment which has been recovered against an administrator or an execu-
tor for a debt of the estate.

JUDGMENT AGAINST ADMINISTRATOR AS EVIDENCE.—In an application to
the Probate Court to sell real estate to pay the debts of the estate, a judg-
ment recovered against the administrator is prima facie evidence of the
indebtedness of the estate, as against the devisee of the real estate, or his
grantee.

APPEAL from the Probate Court of the City and County
of San Francisco.

Herman Schroeder died in January, 1862, leaving real
estate situated on Everett street, and Minna street, in San
Francisco. The deceased left a will, by which he devised
his property to his wife Adeline Schroeder, and appointed
her executrix. The will was admitted to probate on the
10th day of February, 1862, but before letters testamentary
were issued to the executrix, she intermarried with Carl
Jahns, and thereupon, upon the joint petition of said Carl
and his wife Adeline, said Carl was appointed administrator
with the will annexed, and letters were issued to him on the
25th day of March, 1862, and he remained administrator
until the 5th day of February, 1869, when his letters were
revoked by the Probate Court, and Jacob Benjamin, the
Public Administrator, was appointed in his place, and letters
were issued to him on the 21st day of April, 1869. In May,
1862, one Christopher Streitberger loaned to said Carl and
Adeline, his wife, twelve hundred dollars, and to secure the
same, they executed to him a mortgage on the Minna street
property. Streitberger foreclosed this mortgage, and the
property was sold, and he obtained a Sheriff's deed on the

28th day of November, 1868, and immediately entered into possession of the property, and was in possession at the time the proceedings in this case were had.

On the 22d day of October, 1863, H. W. Nolting obtained a judgment, in the Fourth District Court, against Carl Jahns, the administrator, for four hundred and sixty-five dollars and sixty-one cents, and ninety-one dollars and twenty-eight cents costs; and on the 30th day of December, 1863, Bernard Schroeder also obtained a judgment against the said administrator for two thousand six hundred and eighty-three dollars and thirty cents, and one hundred and forty-three dollars and eleven cents, costs of suit. These judgments were entered up as personal judgments, but on the 26th day of April, 1872, were amended by the District Court so as to be made payable out of the assets of the estate, in due course of administration. On the 29th day of October, 1869, Benjamin, the administrator, filed a petition for leave to sell the real estate to pay the judgments and costs, and expenses of administration, and Streitberger and said Adeline opposed the same. Such proceedings were had that the Probate Court, on the 8th day of March, 1871, made an order for the sale, from which order the contestants appealed. The Supreme Court reversed the order, because the petition was defective, and gave the petitioner leave to amend his petition. When the remittitur was filed in the Court below, and in January, 1872, the petition was amended, and Streitberger, on the thirteenth of February, filed an opposition. Benjamin, the administrator, sued Streitberger in ejectment to recover possession of the Minna street property; and, in his complaint, claimed that Streitberger owed the estate three thousand dollars for four years use and occupation of said property. On the trial of this case, Streitberger's attorney offered the papers in said suit in evidence, to show that there was personal property belonging to the estate (the three thousand dollar claim against

his client), but at the same time admitted that his client contested the claim. The Court excluded the evidence.

For the purpose of showing the existence of debts which rendered it necessary to sell the real estate, the petitioner offered in evidence the judgments, as amended, in favor of Nolting and Bernard Schroeder against the administrator. A certified copy of the judgment of Nolting, as amended, had been filed in the Probate Court, April 29th, 1872; and a certified copy of the judgment of Bernard Schroeder, as amended, had also been filed on the same day. The contestant objected to these judgments being received in evidence, because they were irrelevant, and because the amendments revived outlawed judgments against the estate when they were originally personal judgments. The Court overruled the objections. The Court made an order for a sale of the real estate, and from this order the contestant appealed.

The other facts are stated in the opinion.

*J. A. Fletcher*, for Appellant.

As to the two judgments, there was no evidence to support them as against the heirs. This Court, in *Beckett* v. *Selover*, 7 Cal. 215, says that the petition is an action against the heirs, in which a judgment at common law "is not evidence;" that the petitioner "must go behind the judgment," "and prove the original indebtedness," for the heir is entitled to "his day in Court," which he has not had in the proceedings against the administrator. The judgment rolls from the Fourth District Court, introduced under exceptions, were "not evidence," and (as against the heirs) proved nothing, which was all that was offered by the petitioner upon that subject. The evidence should have been to the merits of the action in which judgments were rendered, to test their validity against the estate or heirs; but, in reality, was only to show that judgments had been ren-

dered against the administrator in actions to which neither the estate or heirs were parties, and consequently were not bound. A judgment against an administrator is the same as a claim allowed by the administrator and Probate Judge. (Probate Act, Secs. 133, 140 ; *Moon* v. *White*, 6 John. Chan. R. 389.)

The delay in filing certified transcripts of judgments, and in applying for the order of sale, worked a forfeiture, and the judgments were personal only, and barred by lapse of time.

Section one hundred and thirty-three of the Probate Act is not directory, as contended by respondent, but it is mandatory. It originally read : "Every claim which has been allowed by the executor or administrator shall be filed in the Probate Court," etc. (Compiled Laws, p. 395, Sec. 133.) Which was amended in 1861, as follows, viz : "Every claim which has been allowed by the executor or administrator (and approved by the Probate Judge) shall (within thirty days thereafter) be filed," etc. (Acts 1861, p. 638.)

To say that the Legislature meant nothing by inserting the amendment ("within thirty days thereafter"), is not very complimentary to their good sense. Before amendment it was probably directory only, but not afterwards.

In *Moon* v. *White*, 6 Johns. Chan. R. 360, Chancellor KENT ruled that, when the Legislature has fixed upon no definite time within which a petition to sell real property must be made after administration is entered upon (and our Legislature has fixed none), that it must be done within one year, and that a petition made outside of one year, unless there are some peculiar circumstances that rendered it impossible to make it sooner, will be rejected as out of season ; and quotes, with complimentary commendation, Judge STORY, who ruled that the repose of titles, and protection to bona fide purchasers, requires that there should be a time beyond which, under no circumstances, a petition would be enter-

tained, which, in no case, should be longer than the time fixed by statute limiting the right of entry in real actions, which, in California, is five years. (*Moon* v. *White*, 6 Johns. Chan. R. 360 ; *Scott* v. *Hancock*, 13 Mass. 162 ; *Ex Parte Allen*, 15 Mass. 58 ; *Richaud* v. *Williams*, 7 Wheaton, 116.)

I am confident that no case can be found where a Court ever granted an order of sale of property belonging to an estate to pay even legitimate, much less outlawed debts, where the administrators or creditors had slept upon their rights, and delayed the application beyond, or even up to, the time limiting the right of entry in possessory actions.

Streitberger was a purchaser for a valuable consideration, and seven years five months and twelve days after paying his money, and while in the quiet and peaceable possession, this secret lien is trumped up and sprung upon him, and the order of sale granted, without even a "certified transcript of the judgments" being filed in the Court below, until eight years after the rendition of the judgments, and one year four months and twenty-six days after filing the petition for sale, and without any evidence whatever of their nature or character.

"Contestant's liability for three thousand dollars, for use and occupation of the Minna street property, was a legitimate claim in favor of the estate, and should have been entertained.  The personal property must be first exhausted."

Streitberger, by his purchase, got no present right to the possession, rents, or profits, but only a future right to succeed to what otherwise would go to the widow, after the close of administration.  He was liable to the administrator, from the 21st May, 1868, to the 20th May, 1872.  "That he contested it" is immaterial.  He also contested the sale of real property.  "Contesting it" does not lessen his liability, nor relieve the administrator from his duty to enforce a collection.

The judgment rolls in the two suits, *B. Schroder* v. *Carl Jahns*, and *H. W. Nolting* v. *Carl Jahns*, from the Fourth District Court, were not evidence and proved nothing, and were improperly admitted.

The petitioner should have established the judgments by putting in evidence the certified transcripts, and then he should have proven the "original indebtedness" upon which they were predicated ; and from the nature and character of the indebtedness alone, and not from the judgment, the Court would draw the conclusion of law whether they were valid claims against the estate, to be paid in due course of administration. Failing to do this, it amounts simply to submitting the case upon the petition alone (traversed by the opposition, and without evidence on the part of peti- tioner.)

There was no necessity for a sale of real property. The amending the judgments four years after they were barred by lapse of time, and making them judgments against the estate when they were originally only personal, and filing the transcripts as amended, was unprecedented.

*Sharp & Lloyd* and *Frank G. Newland,* for Respondent.

The appellant claims no interest in the lot on Everett street, and therefore cannot oppose the sale of that lot. Nor has he any right to oppose the sale of the lot on Minna street. He acquired his interest in this lot from the devisee while the estate was under administration, and the adminis- trator was entitled to the possession of it. Yet Streitberger has held the possession adversely to the estate. We insist that he cannot, outside of the Probate Court, deny the right of the estate to the lot, and then appear in the Probate Court and claim the right, as a party interested in the lot, to oppose any of the proceedings.

The Statute of Limitations prescribes the time within which civil actions must be commenced.

A proceeding to sell the real property of an estate in order to pay the acknowledged debts thereof because of insufficiency of personal assets to pay the same, is not an action within the meaning of the Statute of Limitations. It is a proceeding to satisfy a charge upon the entire property of the estate, real and personal, which exists so long as the debts remain unsatisfied and the administration lasts. The Statute of Limitations applies only to suits at law, and not to proceedings in the Probate Court. (Hittell's Gen. Laws, Secs. 4359, 4363; *Green* v. *Dyer*, 32 Maine, 460.)

The language of the Probate Act shows that it was intended that claims allowed and approved, and judgments rendered against the administrator, should have vitality until they should be satisfied, and that time should not run against them so long as the administration should continue. (Probate Act, Secs. 133, 140.)

There is no provision in the Probate Act limiting the time within which to apply for a sale of real estate to pay acknowledged debts. The only sections prescribing limitations are the following: Probate Act, Secs. 36, 128, 130, 134, 135, 137, 186, 190, 237.

If the Statute of Limitation applies to the acknowledged debts of an estate during the administration thereof, then claims allowed and approved, and judgments rendered against the executor or administrator, cannot be renewed so as to prevent the statute from barring them, for the very foundation of an action against an executor or administrator upon a claim against an estate, is the allegation that the claim was presented to the executor or administrator and by him rejected. No such allegation can be made when the claims have been allowed and approved, and are acknowledged debts of the estate, and when the law gives to judgments against an executor or administrator the force and effect of claims allowed and approved. Besides, the claim must be

presented within ten months after notice to creditors, and suit brought within three months after its rejection.

If, then, a creditor is prevented from bringing an action to renew his claim, section twenty-seven of the Statute of Limitations (Hittell's Gen. Laws, Sec. 4369) applies, which is as follows: "When the commencement of an action shall be stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition shall not be part of the time limited for the commencement of the action." (Probate Act, Secs. 130, 133, 134, 136, 140; *Falkner et al.* v. *Folsom's Executors*, 6 Cal. 412; *Hentsch* v. *Porter*, 10 Cal. 558; *Ellison* v. *Halleck*, 6 Cal. 386; *Quivey* v. *Hall*, 19 Cal. 97.)

Upon an application, pending administration, to sell the real estate to pay the claims against an estate, the heir has no right to set up as a defense that the time limited in the Statute of Limitations for bringing actions has expired between the date of their allowance and approval and the date of the application for the sale of real property to satisfy them. It is true that in *Beckett* v. *Selover*, 7 Cal. 229, it is intimated that the Statute of Limitations may produce a bar between the time of the approval of the claim and the contest with the heir, but that portion of the opinion is mere dicta, unsupported by the facts of the case, and in the decision of the Court, upon rehearing, they decline to make any express decision as to the question raised in argument in regard to the Statute of Limitations. The only point really decided in that case was that the heirs have a right to go behind the allowance and approval, and to contest the original indebtedness, after petition and notice for the sale of real estate to pay debts. Where claims have been improperly allowed by the executor or administrator, and where judgments have been obtained against an executor or administrator upon unjust claims, the heirs have two remedies. They can enter suit in the District Court to set them aside, on the ground that

the claims were barred at the time of the allowance and approval, or at the time they were presented to the executor or administrator and rejected, or that they were not justly due. (*Hillebrandt* v. *Burton*, 17 Tex. 138 : *Eccles* v. *Daniels*, 16 Tex. 136.)   Or they can wait until petition and notice of sale of real estate, and oppose the sale on the same grounds. But, in both cases, the defense of the Statute of Limitations is limited to the time of the allowance and approval of the claims, or their presentation to and rejection by the executor or administrator.

The theory upon which our system proceeds is, that the administration of an estate is a trust.   The administrator is a trustee : First, to collect the assets ; second, to apply the same to the payment of debts under the direction of the Probate Court ; third, to distribute the residue pursuant to the provisions of the will and under the direction of the Probate Court.   The administrator is a trustee for all whose debts were valid or subsisting at the time of the death of the testator.   (*McClintock's Appeal*, 29 Pa. 360 ; Tiffany and Bullard on Trusts, 483 ; *Cox* v. *Backentose*, 12 Wend. 543 ; *Chapman* v. *Forsyth*, 2 How. U. S. 208 ; *Halleck* v. *Grey*, 9 Cal. 195 ; *McGraw* v. *McGlynn*, 26 Cal. 420 ; *Brewer* v. *Van Ardsale's Heirs*, 6 Dana, 207, 210.)

It is a well established rule, that unless debts are already barred by the Statute of Limitations, when the trust is created, they are not afterwards affected by lapse of time. (Hill on Trustees, 263 ; Angell on Limitations, Secs. 468, 167, 168, 169.)

In the analogous case of bankruptcy, it has been expressly determined that, after a commission of bankruptcy issued, the Statute of Limitations does not run against a creditor. (*Ex Parte Ross*, 2 Glynn & Jameson, 47, referred to in note 1 to 15 Vesey, 499 ; Angell on Limitations, 167 ; *Minot* v.

*Thatcher,* 7 Met. R., Mass. 348; *Ostram* v. *Curtis,* 1 Cush.
461.)

As an executor or adminstrator is a trustee for legatees,
next of kin, or creditors, the general rule applies. (*Lindsay*
v. *Lindsay,* 1 Desaus. 150; *Carr* v. *Bobb,* 7 Dana, 417; *Blue*
v. *Patterson,* 1 Dev. & Balt. Eq. 457; *Bird* v. *Graham,* 1
Ired. Eq. 196; *Nelson's Adm.* v. *Cornwell,* 11 Gratt. 724.)

The amendment of the judgments was correct. The
record showed that the actions were brought aganist Carl
Jahns as administrator on claims outstanding against the
deceased, and that the judgments were rendered on such
claims. In entering the judgments a clerical error was
committed, in not making them conform to section one
hundred and forty of the Probate Act, which prescribes
the form of such judgments. This error was apparent by
the record, and was corrected by the record; and the judg-
ments, as amended, were entered *nunc pro tunc* as of the
day they were originally entered. The power of a Court,
after the adjournment of the term, to correct clerical errors
and misprisions, is undoubted. (*Hegeler* v. *Henckel,* 27 Cal.
491; *Swain* v. *Naglee,* 19 Cal. 127; *Castro* v. *Richardson,* 25
Cal. 49; 1 Miss. 156.)

Appellant claims that there was unreasonable delay in
applying for the order of sale, and that this should defeat
the application for sale; yet he gives no evidence to sustain
his premises, and cites no law to support his conclusion.
It devolved upon him to show that there was unreasonable
delay; yet he merely recites the fact that the application did
not take place until six years after the judgments were
rendered in the Court below. We claim that, inasmuch as
the administration is still open, it will be presumed that
there was, and still is, reason for keeping it open.

The cases cited by appellant from the Texas Reports do
not apply. Those from the New York Reports were ren-
dered under a different system. In New York the real

estate vests in the heir immediately upon the death of the ancestor, and the heir takes possession. The administrator takes only the personal property to pay the debts. Upon deficiency of personal property to pay debts, he must apply, within three years after grant of administration, to the Surrogate for permission to lease, mortgage, or sell the real estate to pay the debts. After the three years, the creditor can sue the heir, and hold him liable to the value of the property descended. Under our system there is no limit for the application for sale of real estate.

By the Court, CROCKETT, J.:

In respect to the Everett street lot, the order of sale must be affirmed. The appellant claims no interest therein, and the owner who has succeeded to the title of the sole devisee having expressly consented to the order of sale, it does not concern the appellant whether it is erroneous or otherwise. Nor is it clear that he is entitled to be heard in respect to the Minna street lot, so long as he holds the possession of it adversely to the administrator, and refuses to account for the rents and profits. But waiving this question, we deem it best to dispose of the appeal on its merits.

Without entering into a critical analysis of the petition for the order of sale, it will suffice to say, that we think it states all the necessary jurisdictional facts, and is otherwise sufficient. At the hearing of the petition, an objection was made to the introduction in evidence of the judgments in the cases of Nolting and Schroeder against the administrator, on the ground that transcripts of the judgments had not been filed in the Probate Court within thirty days after they were rendered. But section one hundred and forty of the Probate Act only requires that "a certified transcript of the judgment shall be filed in the Probate Court," and is silent as to the time within which it shall be filed. It is true, sec-

tion one hundred and thirty-three provides that claims which have been *allowed by the administrator or executor and approved by the Probate Judge* shall be filed within thirty days thereafter: but no penalty is prescribed for a failure to file them within that time, and the provision as to time is merely directory. Such appears to have been the opinion of this Court in *Willis* v. *Farley,* 24 Cal. 501. But the judgments, as originally rendered, were informal and omitted the pro-vision that they were to be paid out of the estate in the due course of the administration. This omission was supplied by an amendment, made some years after the judgments were rendered; and it is objected that the Court exceeded its powers in permitting the amendment. But it appears on the face of the judgments, as amended, that the amendments were made by the records in the actions; and the power of the Court to correct clerical errors and misprisions by the record itself, after the expiration of the term, is well settled in this State and elsewhere. (*Swain* v. *Nagle,* 19 Cal. 127; *Castro* v. *Richardson,* 25 id. 49; *Hegeler* v. *Henckel,* 27 id. 497.)

Another point made by the appellant is, that when the judgments were offered in evidence they had already been barred by the Statute of Limitations, and were no longer valid claims against the estate. Section fourteen of the Probate Act provides that "the effect of any judgment rendered against any executor or administrator, upon any claim for money against the estate of his testator or intestate, shall be only to establish the claim in the same manner as if it had been allowed by the executor or administrator and the Probate Judge; and the judgment shall be that the executor or administrator pay in due course of administration the amount ascertained to be due." The question then is, whether the Statute of Limitations runs against a claim from the time it is allowed, pending an open and unsettled administration. In *Beckett* v. *Selover,* 7 Cal. 229, referring

to a claim allowed against the estate, the Court says : "It does not lose its effect as a judgment against the administrator, and would not be barred unless time enough has run to bar a judgment." But upon a rehearing the Court said : "As to the question raised in argument, in regard to the Statute of Limitations, it is unnecessary to make any express decision ; but we may remark, as a matter of opinion, that the *presentation* of the claim to the administrator is the *commencement* of a suit upon it, and is sufficient under our statute to stop the running of the statute." We think there are several reasons why the statute does not run, pending the administration, against a claim allowed : First, the creditor is in no default, and has established his demand in the only method authorized by law ; second, it often happens that the estate is so involved in litigation, that no fund is available for the payment of debts until all the claims against the estate would be barred by lapse of time, if the statute runs against claims properly allowed. Other reasons might be adduced, but these are sufficient to show that the Statute of Limitations ceases to run during a pending administration against claims duly allowed.

The point chiefly relied upon by the appellant is, that there was no extraneous proof to support the judgments of Nolting and Schroeder, which, it is claimed, were not even prima facie evidence of indebtedness as against the devisee. It must be conceded that a judgment against the administrator stands upon no better footing than a claim duly allowed by the administrator and the Court. Section one hundred and forty of the Probate Act so expressly declares, and it results that the same rule must be applied to both. In *Beckett* v. *Selover*, 7 Cal. 215, on an application by a creditor for the sale of real estate for the payment of debts, the widow and heirs resisted the application, and denied the existence of the debts. At the trial, the petitioner put in evidence a judgment against the administrator, and also a

claim on open account, which had been duly allowed by the administrator and Probate Judge. The widow and heirs offered to prove that these claims were not justly due from the estate, but the Court excluded the proof, and on the appeal to this Court the ruling was held to be erroneous. The point involved in the case, and decided by this Court, was, that the heir was entitled to go behind the allowance of the claim, and to show, if he could, that it was not a proper charge upon the estate.

We are not aware that this ruling has been modified by any subsequent decision of this Court. But, in the case now under consideration, there was no offer by the contestant to show affirmatively that the judgments of Nolting and Schroeder were unjust, and not a proper charge against the estate; and the point raised here is, that as against the devisee or her grantee, the judgments are not even prima facie evidence of indebtedness. But the proposition is not tenable. There are very satisfactory reasons for holding that in a proceeding for a sale of the property of the heir, for the payment of debts alleged to exist against the estate, he should not be concluded from showing that the pretended debts are unjust, and are not valid claims against the estate. At common law, the real estate went directly to the heir, and the administrator had no control over it, for the payment of debts. If the creditors pursued it in the hands of the heir, it was incumbent on them to establish affirmatively the validity of their demands, and a judgment against the administrator was not prima facie evidence. In Kentucky, however, where the common law system prevails, the Court of Appeals of that State, in a late case, decided that in an action against the heir, a judgment against the administrator was prima facie evidence of the debt. (*Hopkins* v. *Stout*, 6 Bush. 381.) But, however the rule may be at common law, there can be no doubt that, under our system, where the real estate is a fund in the hands of the adminis-

trator for the payment of debts, a claim against the estate, duly allowed, is prima facie evidence of the indebtedness as against the heir. Our probate system is derived mainly from that of Texas, and in most respects is identical with it. *Hillebrandt* v. *Burton*, 17 Texas, 138, was an action by the heirs of a deceased person to set aside a claim against the estate which had been duly allowed by the administrator and approved by the Probate Judge. The Court treats the allowance as a quasi-judgment, and holds that in attacking it the burden of proof is on the heir. In the opinion, it is said: "It must be recollected that the suit was brought to set aside and annul a judgment more than ten years after it had been awarded. Now, the rule of law is well settled, that every presumption is in favor of the judgment, and he who attempts to impeach it must assume the labor of distinctly and clearly showing its vice. This is the rule when there has been no considerable lapse of time between the award of the judgment and the suit to set it aside; but this rule requires a great deal more stringency, and with a good reason, too, if a great length of time is permitted to elapse before the judgment is impeached. Time, with its continual destructive changes, often removes the evidence by which facts could be proven; * * * * and to call upon a creditor after so great a lapse of time as has occurred in this case, would be equally repugnant to justice and sound policy. The plaintiffs should have proven distinctly and clearly that the claim was barred at the time it was presented, to impeach the judgment of the Probate Court allowing it."

This is an adjudication directly upon the point in issue here, and the reasoning by which it is supported commends itself to our judgment. We are, therefore, of opinion that the judgments, without other proof, were prima facie evidence of the indebtedness.

The objection that there was an unreasonable delay in ap-

plying for the order of sale, finds no support in the facts. There appears to have been a persistent and long continued effort on the part of the creditors, to bring the former administrator to an accounting, and the litigation has assumed so many phases, and has been so protracted, as to account for the delay which has occurred.

Order affirmed.

Mr. Chief Justice WALLACE did not express an opinion.