## EMELINE DAGGETT, ADMINISTRATOR OF THE ESTATE OF JACOB DAGGETT, DECEASED *v.* THOMAS H. RANKIN, AND SEBASTIAN VISCHER.

WHAT WILL CREATE MORTGAGE IN EQUITY.—An agreement in writing to give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity or a specific lien on the property so intended to be mortgaged.

WHEN MORTGAGES GIVEN ON THE SAME LAND STAND ON EQUALITY.—D. and V. were tenants in common, each owning equal interests in real estate, and at the same time made contracts in writing with R., drawn upon the same piece of paper, by which they were to convey to R. their respective interests, and R. was to execute to each a mortgage on certain land he was about to acquire, as security for the purchase money due to each. R. gave the mortgages, but that to V. was first made and recorded. *Held*, that the money arising from the sale of the mortgaged premises should be applied equally to the payment of the sums due D. and V.

RIGHTS OF MORTGAGEES AS BETWEEN EACH OTHER.—When the owner of land contracts in writing with two persons at the same time to execute to each a mortgage on the same, and each has knowledge of the agreement with the other, and nothing is said about priority of mortgages, the mortgages afterwards executed stand upon an equality although one may have been first executed and recorded.

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

The facts are stated in the opinion of the Court.

*P. L. Edwards*, for Appellant.   Vischer *ex necessitatc* took the mortgage to himself, with full knowledge of Daggett's rights, and could not take an operative mortgage for more than an undivided half of the property, subject to the equities existing between himself and Daggett.   It could not have been the intention of the parties that Daggett should waive his lien or his right to an equality in the assets arising from the sale of the property about to be mortgaged.   When a party purchases with notice of an existing contract in reference to real estate, he takes it subject to the contract.   (Hilliard on Vendors, p. 39; 1 Story's Eq. Jur., Secs. 395, 349; Id., Secs. 6, 7, 8, 33, and 64.)

*M. G. Cobb*, for Respondent.   Vischer's mortgage was first made and recorded.   "Where two or more hold lands at the same time by several and distinct titles, they are tenants in common."   (1 Black. 191.)   Each tenant in common has a separate and distinct freehold.   From these principles it results that if Vischer was tenant in common with Daggett, he could sell his interest in the Union Mill, independent of Daggett. If he could do this, then he could take a mortgage for the purchase money and hold the same to his own use, to the exclusion of Daggett.   The case at bar is not one where a mortgage is made to two or more by one instrument at the same time, to secure several debts.   (*Goodwin* v. *Richardson*, 11 Mass. 469; *Delaney* v. *Hutchinson*, 2 Rand. 183; and *Donnells* v. *Edwards*, 2 Pick. 617.)

By the Court, CURREY, C. J.:

On the 2d of June, 1863, Jabez Daggett, then living, and the defendant Vischer were the owners equally as tenants in common of the Union Flour Mills and a storehouse therewith connected, and the land whereon the same were situated, in the City of Stockton in this State.   On that day, Daggett and the defendant Rankin entered into a contract, by which the former agreed to sell and convey his right, title and interest

in the property to the latter, for the sum of two thousand
five hundred dollars, upon a credit of five years at a specified
rate of interest per month, payable monthly after the 1st of
August then next.   Rankin agreed to make the purchase at
the price and upon the terms above mentioned.   It was fur-
ther agreed between the parties that Rankin should remove
the mill to a piece of land which he was about to purchase at
Woodbridge in San Joaquin County.   Daggett further agreed
that upon the completion of the purchase by Rankin of the
land at Woodbridge and erecting the mill thereon he would
execute a good and sufficient deed of his undivided half of the
property which he contracted to sell and convey to Rankin,
provided Rankin should make and execute to Daggett a mort-
gage of the land and mill at Woodbridge as security for the
payment of said sum of two thousand five hundred dollars, and
the interest to accrue thereon.   At the time of the execution
of the contract between Daggett and Rankin, the defendants
Vischer and Rankin entered into a contract written upon the
same paper, in the following words: "Sebastian Vischer
promises and agrees to sell his undivided half of the aforesaid
property to T. M. Rankin on the conditions expressed in the
foregoing agreement.   T. M. Rankin agrees to take said prop-
erty on the same conditions."   The property referred to in
the contract between Vischer and Rankin was the property at
Stockton, and the "foregoing agreement" mentioned therein
was, the contract between Daggett and Rankin.   After these
contracts were executed, Rankin purchased the place at Wood-
bridge and erected thereon the mill as he had agreed to do,
and thereupon Daggett and Vischer conveyed to Rankin the
Stockton property.   After this Rankin made and delivered to
Vischer and Daggett respectively his promissory notes for the
sum of two thousand five hundred dollars, payable five years
after the dates of the same, with interest at the rate of two
per cent per month, payable monthly, and to secure the pay-
ment of said notes with the interest as the same should become
due, executed to each of them a mortgage on the property at
Woodbridge.   The note and mortgage, executed and delivered

to Vischer, were so executed and delivered, and the mortgage was recorded before the note and mortgage to Daggett were executed and delivered.

Rankin failed to pay the interest on his note given to Daggett, and the plaintiff, as administrator of the estate of the deceased, filed her complaint to recover the interest due and also the principal, and to foreclose the mortgage executed to secure the same, making the defendant Vischer a party defendant for the purpose of adjusting the equities existing between him and the estate of Daggett as to the respective securities taken by Vischer and Daggett in his lifetime.

The plaintiff maintains that notwithstanding Vischer obtained his note and mortgage, and caused his mortgage to be recorded before the note and mortgage to Daggett were executed and delivered, the two mortgages as securities should be placed upon an equal footing, on the ground that the contracts made by Vischer and Daggett respectively with Rankin, were made at the same time and upon like conditions, one of which was that Rankin should secure the debt which he owed each of his grantors for the property purchased of them, by the execution to each of them of a mortgage of the Woodbridge property.

The defendant Vischer appeared and filed a pleading which he denominated an intervention. He does not traverse the facts stated in the complaint, otherwise than by an averment that the lien of the mortgage executed to Daggett was not coequal and coextensive with the lien of the mortgage executed to him, but he says the mortgage of Daggett was never intended to be and become a lien upon the property mortgaged of equal dignity and effect with the lien of the mortgage to himself, but was always subordinate and subject thereto. The defendant Vischer further by pleading shows that on the 27th of July, 1863, Rankin made and delivered to him a promissory note in the sum of two thousand five hundred dollars, payable five years after date, with interest thereon at the rate of two per cent per month, payable monthly, and that to secure the payment of the principal and interest as the same

should become due, Rankin executed to him, Vischer, a mortgage of the Woodbridge property. That the interest which had accrued on the note remained wholly due and unpaid; and upon the matters pleaded by him he prayed for judgment against Rankin for the money due on the note described, and that the mortgaged premises might be sold to satisfy the same; and he also prayed that the questions which had arisen between the plaintiff and himself in relation to the liens of their respective mortgages might be determined, etc. The defendant Rankin filed no answer either to the complaint of the plaintiff or to the pleading of the defendant Vischer, and his default was duly entered.

The cause was tried before the Court without a jury. Judgments were rendered in favor of the plaintiff and Vischer respectively against Rankin for the amounts of each of their promissory notes, and among other things the Court found as a fact that Vischer received his note and mortgage of Rankin, "entirely independent of and without connection with said note and mortgage delivered" by Rankin to Daggett; also that the contracts between Rankin and Daggett, and between Rankin and Vischer were written upon the same piece of paper on the 2d of June, 1863, and that these contracts provided that upon the execution of a deed by the said Daggett and Vischer respectively to Rankin of their several interests in the Stockton property, the latter was to execute to the former the notes and mortgages mentioned in the contracts. The Court thereupon decided and decreed that the mortgaged premises be sold, and that from the proceeds arising therefrom, Vischer should be first entitled to sufficient thereof to pay the amount due him if there was sufficient for that purpose, and that plaintiff should then be entitled to sufficient of what remained to pay the amount due the estate of Daggett, if there was sufficient for that purpose, and that if there was a balance still remaining the same should be paid to the defendant Rankin.

From the judgment and decree holding in substance and effect that the plaintiff's mortgage was subordinate and sub-

ject to that of Vischer's and postponing the demand of the
plaintiff to that of Vischer, the plaintiff has appealed.

The pleadings in the suit are drawn in an extremely loose
and careless manner, as if under our system of stating the
plaintiff's cause of action or the defendant's defense, the widest
departures from the rules and principles of logical and correct
composition were to be preferred to a clear and concise state-
ment of the cause of action, or the defense thereto ; but as the
parties and the Court which tried the cause seem to have been
satisfied with them as to their form and substance, we shall
endeavor to dispose of the questions presented for our consid-
eration upon the merits of the whole case, without suffering
ourselves to be embarrassed by doubts and difficulties arising
upon the face of the pleadings.

The rights of the respective mortgagees of Rankin had their
inception in the contracts entered into by them respectively
with him.  Both Daggett and Vischer consented and agreed
to convey their several interests in the Stockton property to
Rankin, on certain conditions, one of which was that the latter
would secure to each of them the payment of the considera-
tion price of that which he purchased of them severally, by a
mortgage on the Woodbridge property.  This condition was
a matter of contract on the part of Rankin, and one of the
class of contracts the performance of which a Court of equity
is competent to enforce.  Vischer knew at the time he entered
into the contract to sell and convey to Rankin the Stockton
property, and subsequently when he obtained the mortgage
on the Woodbridge property, that Daggett had agreed to sell
and convey his interest in the Stockton property to Rankin,
for twenty-five hundred dollars, to be paid some five years
thereafter, with interest, and that Rankin agreed, ·upon the
conveyance being made, to secure the payment of the pur-
chase price and the interest, by a mortgage on the Woodbridge
property.  In *Delaire* v. *Keenan*, 3 Dessau. R. 74, Mr. Chan-
cellor *Dessaussure* decided that an agreement for a mortgage
was, in equity, a specific lien on the land.  The doctrine
seems to be well established that an agreement in writing to

give a mortgage, or a mortgage defectively executed, or an imperfect attempt to create a mortgage, or to appropriate specific property to the discharge of a particular debt, will create a mortgage in equity, or a specific lien on the property so intended to be mortgaged. (1 Am. Lead. Cases in Equity, 510; *Howe's Case*, 1 Paige, 125.) The maxim of equity upon which this doctrine rests is that equity looks upon things agreed to be done as actually performed; the true meaning of which is that equity will treat the subject matter as to collateral consequences and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been. (Story's Eq. Jur., Secs. 64 and 790; Willard's Eq. Jur. 298, 299.)

As between the plaintiff's intestate and Rankin there is no room to doubt that by the contract entered into between them the latter was bound to execute to the former a mortgage on the Woodbridge property as stipulated, and there is as little occasion to doubt that by virtue of the contract Daggett acquired, upon conveying his interest in the Stockton property to Rankin, an equitable mortgage upon the Woodbridge property by force of the contract entered into on the 2d of June, 1863. Of the existence of this contract between Daggett and Rankin the defendant Vischer had knowledge at the time he contracted to sell and convey his interest in the Stockton property. He was therefore bound to respect the rights of Daggett in the premises, and especially is he bound so to do, inasmuch as he obtained all the security which by the contracts entered into on the 2d of June it was contemplated he should have, for the payment of the consideration for his share of the Stockton property sold and conveyed to Rankin.

It is manifest that Daggett and Vischer intended to stand upon an equality respecting the security which they were to receive from Rankin for the payment of their respective moieties of the entire consideration for the Stockton property. The contracts entered into on the 2d of June furnish ample evidence upon this point. They were executed cotemporaneously, and in them is to be found the embryo life of the

mortgages subsequently executed; and as each of the mortgagees had knowledge of the rights of the other in their origin and inception, the two mortgages must be held to stand upon an exact equality, and the decree of the Court below must be so modified and changed as to direct the moneys arising from the sale of the mortgaged premises to be applied equally to the payment of the debts due from Rankin to the estate of Daggett, deceased, and to the defendant Vischer.

The judgment and decree of the District Court is hereby reversed in so far as it in effect determines that the plaintiff's mortgage was subsequent and subject to the mortgage of said Vischer, and in so far it is thereby decreed that out of the moneys arising from the sale of the mortgaged premises the same should be first applied to the payment of the judgment of said Vischer, and the Court below is directed to enter a decree modifying and changing the decree of said District Court, so that the decree, as the same shall be entered, shall direct that of the money arising from the sale of the mortgaged premises, the same shall be applied equally to the payment of the said judgments rendered in favor of the plaintiff and in favor of said Vischer respectively against said Rankin; and it is further ordered and adjudged that the plaintiff have and recover against the said Vischer the costs of this appeal.