NISBIT, Assignee, etc., *v.* MACON BANK & TRUST CO. and others.*

*(Circuit Court, S. D. Georgia, W. D. June 17, 1882.)*

1. BANKRUPTCY—ILLEGAL PREFERENCE.

Cubbedge & Lockett were members of the firm of C., H. & Co., and also president and cashier of a "Bank & Trust Co.," in which C., H. & Co. were stockholders. The firm was indebted to the B. & T. Co., and agreed verbally with C. and L., as officers thereof, to secure the indebtedness by the stock which the firm owned in the B. & T. Co. This agreement was reported to and accepted by the directors of the B. & T. Co. Various stock certificates standing on the books of the B. & T. Co. in the name of C., H. & Co. were, under their agreement, (probably,) deposited with and held by Lockett as cashier of the B. & T. Co.; but no written transfer, or power of attorney authorizing transfer, was executed. The firm had been insolvent for some time, and a few days before its suspension, also within less than four months before adjudication in bankruptcy, the firm for the first time made a formal note evidencing said indebtedness, and formally transferred said shares upon the books to the B. & T. Co. *Held*, that the assignee in bankruptcy of said firm is entitled to recover said stock, or the value thereof, from said B. & T. Co.

2. SAME—NOTICE.

Where two members of an insolvent firm are president and cashier of a bank, their knowledge of the insolvency of their firm is the knowledge of the bank.

3. PLEDGE OF STOCK.

A transfer on the books of the company, or the execution of a power of attorney authorizing a transfer, is essential to pledge of corporate stock, (except when by statute it is otherwise provided, as in Louisiana.)

4. SAME—REQUISITES OF POSSESSION.

When the pledgeors of stock retain the title and control of the stock pledged, the power of withdrawal and substitution, so that they can transfer or negotiate the same without consulting the pledgee, while the pledgee could not control the stock without consulting the pledgeors, the mere deposit of the stock certificates (standing in the name of the pledgeors) with the pledgee does not create a valid pledge thereof.

In Equity. Submitted upon pleadings and evidence for final decree.

*Hill & Harris,* for complainant.

*Bacon & Rutherford,* contra.

PARDEE, C. J. For several years prior to June 6, 1878, R. W. Cubbedge, William Hazlehurst, and J. W. Lockett, under the firm name of Cubbedge, Hazlehurst & Co., were engaged in the city of Macon in carrying on a general banking and brokerage business. On the said sixth day of June, 1878, the said firm failed in business and made a general assignment of their assets then on hand to W. W.

*Reported by W. B. Hill, Esq., of the Macon bar.

Carnes for the benefit of their creditors. On or about the twenty-fifth of August, 1878, the members of said firm were on their own petition adjudicated bankrupts, and thereupon the complainant was appointed as assignee of said firm. On the twenty-third day of April, 1880, the assignee filed his bill in the United States court against the same firm, and against the members of the same in certain representative capacities, and against certain other parties, including the Macon Bank & Trust Company, the object of said bill being to set aside certain mortgages and transfers of property alleged to have been made by said firm prior to said assignment in fraud of the bankrupt act and in violation of its provisions. As to the other parties in the case, a decree has been had in this court affirming the validity of said mortgages and conveyances, and the case is now against the Macon Bank & Trust Company to set aside the transfer to it of 212 shares of the capital stock of the said Macon Bank & Trust Company by the said Cubbedge, Hazlehurst & Co.

Complainant in his bill alleges that the transfer of said 212 shares of stock to the Macon Bank & Trust Company by Cubbedge, Hazlehurst & Co. but a few days prior to said assignment was fraudulent; that said firm of Cubbedge, Hazlehurst & Co. and the said Macon Bank & Trust Company were practically one organization; that the said transfer was made by Cubbedge, Hazlehurst & Co. when they were bankrupts and insolvent, and when they were in contemplation of bankruptcy and insolvency, and with the intent to work a fraud on the bankrupt act, and to defeat and delay the operation of said act; and that such intent was known to the Macon Bank & Trust Company at the time of receiving said transfer. The complainant also alleges that Cubbedge, Hazlehurst & Co. were stockholders to the extent of the 212 shares of stock in the Macon Bank & Trust Company, and that said transfer was made for their personal benefit as such stockholders; and that said transfer was made within four months prior to the bankruptcy of said firm; also that said Macon Bank & Trust Company had cause to know that said Cubbedge, Hazlehurst & Co. were insolvent at the time, and that such transfer was made to prevent the property of Cubbedge, Hazlehurst & Co. from being distributed under the bankrupt act, and to impair, hinder, impede, and delay the operation of said act, and was made within less than six months prior to the filing of the petition in bankruptcy.

The answer of the Macon Bank & Trust Company, as stated by its counsel, presents substantially the following case: It is admitted that

the final transfer of the 212 shares was made by Cubbedge, Hazlehurst & Co. to the Macon Bank & Trust Company on the date charged in the bill, but it is also averred that said transfer was simply a hypothecation of said shares of stock made more than six months prior to the time of the said transfer, which hypothecation was made in good faith to secure a *bona fide* indebtedness of Cubbedge, Hazlehurst & Co. to the Macon Bank & Trust Company. The history of this hypothecation and subsequent transfer, as alleged in the answer, is, in brief, as follows: The capital stock of this bank was accumulated by the payment periodically of small instalments by the stockholders. Shortly after the bank began to run it was so crippled, by bad loans to a large amount, that the business of the bank could only be carried on by making some economical arrangement for its ordinary expenses. Accordingly, Cubbedge was elected president and Lockett cashier, on small salaries, with an arrangement that the business of the bank should be carried on in the banking office of Cubbedge, Hazlehurst & Co., thus saving bank rent. After this arrangement the Macon Bank & Trust Company received no deposits, and its own money, as it came in, was, when not otherwise loaned out, kept on deposit with Cubbedge, Hazlehurst & Co. The books of the Macon Bank & Trust Company showed what money was received for it, and the books of Cubbedge, Hazlehurst & Co. showed how much money they had on deposit of the funds of the Macon Bank & Trust Company. This amount naturally varied. As the money thus on deposit was loaned out for the Macon Bank & Trust Company, the amount of such deposit decreased; and, on the other hand, as money was paid in and not loaned out the deposit increased.

The amount of these deposits was regarded by Cubbedge, Hazlehurst & Co. as a loan, as it indeed was. As this amount was constantly varying, and subject to call whenever needed in the business of the bank, and was being in fact daily called in part to meet the demands required in the business of the bank, no paper was made by Cubbedge, Hazlehurst & Co. to represent this indebtedness to the Macon Bank & Trust Company. It would have been impracticable to have made papers that would have corresponded to the continual changes in the amount of such indebtedness. It would have been necessary not only to cancel the paper and make another each day, but a dozen or twenty times a day, as the balance to the credit of the Macon Bank & Trust Company constantly fluctuated, increasing as the money came in, and decreasing as it was paid out to borrowers, etc. Hence it was only practicable to have this indebtedness shown

in the balances on the books.   For the same reason, on account of the constantly fluctuating amount of the indebtedness, it was necessary to make a provision of a general character to secure the Macon Bank & Trust Company in the amount of this indebtedness.

It was therefore arranged and agreed between Cubbedge, as president, and Lockett, as cashier, on one part, and each of the three members of the firm of Cubbedge, Hazlehurst & Co. on the other part, that to secure the amount of this indebtedness of said firm to said bank, Cubbedge, Hazlehurst & Co. would keep continuously deposited with the Macon Bank & Trust Company, and hypothecated with the same, a sufficiency of the stock scrip of the firm in the Macon Bank & Trust Company.   This arrangement and agreement was not only made between the said officers of the bank and the several members of the firm, but the same was reported to the directors of the Macon Bank & Trust Company, and by them approved and accepted.   In May, 1878, the balance in favor of the bank against the firm was $21,200, and the 212 shares of said stock were formally transferred by the firm to the bank, the same being simply to fully transfer the stock thus previously hypothecated.

To the answer a formal replication is pleaded, and the case has been heard on its merits.

The evidence in the case sustains in the main the averments in the answer, with the unimportant modification that there was no actual possession or delivery of the stock in controversy until May 29, 1878, five days before the assignment to Carnes, and about 90 days before the adjudication in bankruptcy.   Indeed, the evidence of the transfer stock-book of the bank is that party shares of that stock were acquired by the firm of Cubbedge, Hazlehurst & Co. on that day.   See stock certificate, No. 253.   That under the verbal agreement between Cubbedge, president, and Lockett, cashier, of the one part, and those gentlemen and Hazlehurst, forming the firm of Cubbedge, Hazlehurst & Co., of the other part, to protect the bank by hypothecating the scrip of the bank as security for such balances as might from time to time be due from the firm to the bank, various certificates of stock of the bank belonging to the firm were placed by Lockett, partner in the firm and cashier in the bank, from time to time, in a separate box under his own control in the vault of the firm, appears to be very probable; but it does not appear that any transfer or authority to transfer was ever given, nor that the certificates were retained by the bank as a certain deposit, but it does appear that the firm retained

and exercised the right of withdrawal and substitution at their own convenience, and without consulting the bank. And it also appears that the stock so separated by Lockett never passed from the control of the firm and into the control of the bank until the twenty-ninth of May, 1878, for while the certificates were in the possession of a joint agent the bank could not transfer, assign, or negotiate them, and Cubbedge, Hazlehurst & Co. could.

What is necessary to constitute a valid pledge of stock in an incorporated company has been the subject of much discussion and learning, with resulting conflicting decisions, but although formerly there was doubt whether it could be the subject of a pledge at all, there is no doubt, in the absence of statutory provisions, that to pledge stock some written transfer or contract is necessary as against third parties. Mere handing over the certificate is not sufficient. There must be a transfer on the books of the company, or a power of attorney authorizing a transfer, or some assignment or contract in writing by which the holder may assert title and compel a transfer when desired. See Law of Collateral Securities, by Jones, (Am. Law Rev. No. 2, Feb. 1880.)

The only state where, I am informed, delivery of the certificate of stock is sufficient is Louisiana, and there only by express provisions of the Code. See La. Rev. Civ. Code, art. 3158. The decisions of the supreme court of that state, (30 La. Ann. 714, 1378,) which this court followed in *Banking Ass'n* v. *Wiltz*, 10 FED. REP. 330, were each of them based on written assignments, and the case also cited 31 La. Ann. 149, turned on the frauds committed by the pledgors, who were officers of the defending company.

In this state, (Georgia,) whose laws must control this case, the statute is specific that the thing pledged must be delivered. Ga. Code, § 2138. The case, then, is to be taken as showing an agreement to pledge such amount of stock as should be necessary, running through several years, accompanied by a separation of the certificates of stock, but no pledge until May 29, 1878, from which it follows that, as against the complainant as assignee in bankruptcy, the defendant bank is without good title to the stock in controversy, and must surrender the same or its value. There can be no pledge of property for the security of the payment of a debt without delivery of the thing pledged, cases of promissory notes and evidences of debt excepted. Ga. Code, § 2138. See, also, 96 U. S. 467. An agreement to pledge gives no privilege. *Casey* v. *Cavaroc*, 96 U. S. 467. Equity will not regard a thing as done which has not been done,

when it would injure third parties who have sustained detriment and acquired rights by what has been done. Id.

The pledge made May 29, 1878, by the bankrupts to the defendant is void under section 5128, Rev. St., for it was made by an insolvent with a view of giving a preference, and the person receiving had a reasonable cause to believe the pledgor was insolvent, and the same was within four months prior to the adjudication in bankruptcy. There can be no doubt that the firm of Cubbedge, Hazlehurst & Co. were insolvent, and that Cubbedge and Lockett knew it, nor can there be any doubt that the knowledge of the president and cashier of the bank was the knowledge of the bank. See Wade, Notice, § 675. The very transaction itself, under the light of this case, puts the pledge of May 29th within the statute.

For years the verbal agreement to keep the bank secured with its own scrip was allowed to run with no note, no transfer, nothing but Lockett's box, which he emptied and replenished as the exigencies of the case required, when, five days before the crash, the most formal of notes and formal of pledges were put in writing, duly witnessed, and the stock transferred on the books besides. The parties had slept too long on this agreement for a continuous hypothecation to have been wakened without occasion of some kind. What could it have been? Not the insolvency of Cubbedge, Hazlehurst & Co., for they had been insolvent for years. Not new business methods, for no change appears to have been made among the managers of the bank. There is no showing of a sudden want of the bank for either money or collaterals. In short, no explanation is given or attempted, and it is a fair inference from the circumstances that bankruptcy was contemplated, and therefore the long-standing agreement to hypothecate stock scrip to secure the bank was carried out, so that the bank might be protected in preference to other creditors.

The other branches of this case, *i. e.*, as to transfers being void because of usury in the debt secured by the transfer, need not be discussed nor decided.

The complainant should have a decree adjudging him entitled to the 212 shares of stock in controversy, and compelling the Macon Bank & Trust Company to deliver the same in kind or in value; the latter to be fixed by reference to a master, as the evidence in the case is incomplete on that point.