## W. D. WAGNER ET AL. v. F. M. MARPLE.

### No. 1826.

1. **Pledge of Corporate Stock—Title.**—The mere delivery of corporate stock as a pledge will not pass the title thereto in the absence of any transfer by indorsement.

2. **Conversion by Tenant—Demand.**—It is not necessary, in order to maintain an action of conversion against a tenant who wrongfully withholds the leased property, that demand for its possession should be made on the tenant or on one aiding and abetting him in such wrongful holding.

3. **Corporation—Transfer of Entire Property.**—The transfer by a corporation of its entire property to one who owns all of its stock, in consideration of a surrender of the stock, is not invalid as against a stranger to the corporation.

4. **Levy on Corporate Stock—Notice to Officer.**—A levy on corporate stock is void where no notice is left with any officer of the corporation, as required by article 2594 of the Revised Statutes.

5. **Conversion—Prior Possession Sufficient, When.**—A lessor's prior possession of the property is sufficient to sustain an action of conversion by him against the lessee and one acting with him in wrongfully holding the property, where they have not connected themselves with any outstanding title of a superior character.

6. **Judgment Against Joint Wrongdoers.**—Where several joint wrongdoers are sued together, a failure to find against some of them, even if error, does not afford the others a ground of complaint.

APPEAL from Hardeman.    Tried below before Hon. G. A. BROWN.

*Duncan G. Smith,* for appellants.—If the Quanah Publishing Company was not otherwise indebted, it was indebted to the City National Bank to the extent of sixty-five shares of its capital stock, of the par value of $10 per share, and while this liability existed its board of directors could not give away or transfer to Marple, without consideration, as was attempted to be done, all of its assets.    Sayles' Civ. Stats., art. 575, sec. 7; Id., arts. 589, 604, 606; Const., art. 12, sec. 2; Rollins v. Clay, 33 Me., 132; Railway v. Dunn, 39 Me., 587; Burke v. Smith, 16 Wall.(U. S.), 395; Abbott v. Rubber Co., 33 Barb. (N. Y.), 578; Railway v. Bowser, 48 Pa. St., 29.

*A. G. Walker,* for appellee.—1.    If the finding of the court that no demand was made on defendant Smith was error, it was harmless error. An actual conversion having been shown, an actual demand was not necessary, even though Smith had come lawfully into possession of the property.    Tompkins v. Haile, 3 Wend. (N. Y.), 404; Gentry v. Maddin, 3 Ark., 127; Kyle v. Gray, 11 Ala., 233; Davidson v. Donadi, 2 E. D. Smith (N. Y.), 121.

2.    F. M. Marple being the owner of all the shares of stock of the Quanah Publishing Company, he was the owner of all the property of the corporation, and the sale by the directors was only a matter of form, evidencing the intention to dissolve the corporation and place the title of the property in F. M. Marple, in his individual capacity.    Sayles' Civ. Stats., art. 590; 18 Am. and Eng. Encyc. of Law, 611c; Colebrook on Col. Sec., sec. 273, and authorities.

3.    The court did not err in concluding that the acts of defendants, Smith and Wagner, amounted to a conversion of the property, and rendering judgment against them for the value of the property.    Sanford v. Wilson, 2 Wills. C. C., sec. 251; 2 Hilliard on Torts, 4 ed., pp. 242, secs. 9, 9a, and note a; 1 Waterm. on Tres., sec. 63; McManus v. Lee, 43 Mo., 206; Judson v. Cook, 11 Barb. (N. Y.), 642.

TARLTON, CHIEF JUSTICE.—We take from the appellants' brief the following substantially accurate statement of this suit:

"This is an ordinary action, brought October 17, 1893, by appellee, F. M. Marple, against W. D. Wagner, D. G Smith, J. E. Ledbetter, and Eugene Stearns, for conversion of personal property, alleged by Marple to belong to him and to be of the value of $2600.    All of the defendants pleaded the general denial, and defendants Smith, Ledbetter, and Stearns pleaded that the property was in the possession of the Quanah Publishing Company, a corporation duly incorporated under

the laws of the State of Texas, having its principal office in the city of Quanah, Hardeman County, Texas, and that the Quanah Publishing Company was the legal and equitable owner of said property; that Smith was president, Ledbetter vice-president, and Stearns secretary and treasurer of the publishing company; that neither of the defendants assert or claim, or ever asserted or claimed, any ownership, possession, or right of possession in or to the property; that they were owners and possessors of a majority of the stock of the publishing company; that its capital stock was $2000, and they owned 150 shares of the par value of $10 per share, and that they have no other or further connection with the property than as president, vice-president, secretary and treasurer of the publishing company. To this answer plaintiff pleaded the general denial; denied that defendants Smith, Ledbetter, and Stearns were directors of the Quanah Publishing Company, and prayed, in the event there was no conversion, that he have judgment for possession of the property and the value of its use. To this supplement defendants interposed a general denial. Trial by the court, and judgment in favor of Marple against defendants W. D. Wagner and Duncan G. Smith for $1200 and costs, and that plaintiff take nothing against defendant Ledbetter and Stearns. From this judgment defendants Wagner and Smith have appealed."

*Conclusions of Fact.*—On July 29, 1889, the Quanah Publishing Company was incorporated under the general statutes of the State of Texas. According to its charter, it was formed for the purpose of establishing a newspaper in the town of Quanah, Hardeman County, and of doing a general publishing business for the use of the public. Its charter provided that it should exist for the term of twenty years; that its business should be transacted by three directors, who shall be elected by the stockholders annually on the first Monday of July; the capital stock to consist of 200 shares of $10 each, of which 40 per cent should be paid on the date of organization, 30 per cent six months from that date, and 30 per cent twelve months from that date. On October 7, 1891, the stock and shares of the corporation were owned by F. M. Marple, plaintiff and appellee, he having purchased all of the stock, and assumed to pay the indebtedness of the Quanah Publishing Company. After its organization, in 1889, the Quanah Publishing Company engaged in the publishing of a newspaper known as the Quanah Tribune, in the town of Quanah.

On October 7, 1891, it was the desire of the plaintiff, F. M. Marple, who owned all the stock of the corporation, and also of the officers of the corporation, to dissolve and discontinue it, and to this end the officers and the board of directors of the corporation, by and with the consent of F. M. Marple, the sole owner of the stock, who co-operated in the transaction, passed a resolution authorizing the sale of the newspaper and its attachments, which included all of the property owned by the corporation, and in controversy in this suit, to the

plaintiff, Marple; and in accordance with that resolution, the corporation, through its duly authorized officers, for the recited consideration of $2000, executed a bill of sale to the appellee, which, on November 7, 1891, was duly acknowledged and filed for record.

After the execution of this transfer, and by virtue thereof, Marple took actual possession of the property and proceeded to publish the paper in his individual name. He thereafter removed it from Mercer street into a different building, on Johnson street, where it has since been. On October 8, 1892, he leased the printing office and outfit, including all the property in controversy, to W. D. Wagner and S. J. Osborne for the term of one year, at the rate of $25 per month, payable monthly in advance, with the understanding that the lessees, at the end of the term, should have the option of purchasing the property or of returning it to the plaintiff. Wagner, one of these lessees, was the acting president of the Quanah Publishing Company at the date of the sale to the plaintiff. In the spring of 1893 Osborne was released from his obligation to the plaintiff, at the request of himself and of Wagner, and it was agreed between the three that the appellee should look alone to Wagner to carry out the lease contract.

At the expiration of the lease, Wagner, who was indebted for several months' rent to the plaintiff, declined to exercise the option of purchasing the property. A demand, on or about the 14th of September, 1893, was thereupon made of him to return it. This demand he refused, on the alleged ground that he had delivered the property to Duncan G. Smith, president of the Quanah Publishing Company.

On May 17, 1893, W. E. Johnson recovered judgment against the plaintiff F. M. Marple, in the Justice Court of Hardeman County, for $36. On August 30, 1893, alias execution issued on this judgment, which was delivered to the constable of precinct number 1, Hardeman County, who attempted to levy it upon 85 shares of stock owned by F. M. Marple in the publishing company. The certificates of these shares of stock were then in the possession of William F. Brice, in the town of Quanah. The levy was made by constable taking possession and levying upon the certificates of stock and advertising them for sale. The constable sold and delivered the certificates and shares of stock, as he denominated them, to D. G. Smith, J. E. Ledbetter, and Eugene Stearns, who bid the sum of about $40 for them, and received the certificates, with a bill of sale from the constable purporting to convey to them the 85 shares of stock in the Quanah Publishing Company. From the sale to plaintiff as already described, until this purchase by Smith, Ledbetter, and Stearns, there had been no act performed by the Quanah Publishing Company, nor transaction in any way recognizing its existence.

Sometime prior to the sale by the Quanah Publishing Company, to plaintiff, one J. E. Decker, then a stockholder in the company, hypothecated with the City National Bank of Quanah 65 shares of the stock of that corporation, which at the time were owned by him. These

shares were hypothecated as collateral to secure his note to the bank. Plaintiff purchased this stock from Decker, and thereupon assumed the payment of Decker's indebtedness to the bank, and in lieu of Decker's note executed and delivered to the bank his individual note. Upon this a balance remained due and unpaid, for which the bank at the time of the trial below held the 65 shares of stock in the Quanah Publishing Company.

We infer that these shares were simply delivered to the bank, unaccompanied by any transfer by Decker in the first instance or Marple thereafter, or by any indorsement in blank or otherwise. We further infer, that at the time of the transfer to him, and thereafter, all of the stock stood upon the books of the company in the name of the appellee. The findings of fact of the trial court are silent upon whether the stock thus stood or not, but we indulge in the inference above set out, from the undisputed testimony of the plaintiff Marple, that he owned all the shares of the stock of the corporation, and that the trial court finds in accordance with that testimony.

The constable sought also to levy the execution above referred to upon the sixty-five shares of stock hypothecated to the City Bank. The return upon the writ shows that it was executed by levying on the 151½ shares of stock of the Quanah Publishing Company, as the property of F. M. Marple. We conclude, in accordance with the findings of the trial court, that the constable did not levy on the stock by leaving a notice thereof with any officer of the corporation; in fact, that there was no attempt on the part of that officer to levy upon the shares of stock in the Quanah Publishing Company in the manner prescribed by the Revised Statutes for levying upon and selling corporation stock.

Under the bill of sale by the constable of September 5, 1893, Smith, Ledbetter, and Stearns assumed to be stockholders in the Quanah Publishing Company, held a meeting, and elected themselves a board of directors of the Quanah Publishing Company, and immediately thereafter elected Duncan G. Smith president, J. E. Ledbetter vice-president, and Eugene Stearns secretary and treasurer of the Quanah Publishing Company. Thereupon Duncan G. Smith, as president of the corporation, demanded and received of W. D. Wagner possession of the property sued for. It was, however, concluded by them and W. D. Wagner, that Wagner should, as president of the Quanah Publishing Company, call a meeting of the stockholders of the company for the purpose of electing a board of directors, as Wagner had never resigned the office of president of the corporation held by him at the date of the sale of the company's property to the plaintiff, October 7, 1891.

Thereupon Wagner called a meeting of the stockholders of the corporation to be held in Quanah on September 25, 1893, to elect a board of directors thereof. Notice of the call and meeting was published in the Quanah Tribune, then being edited by Wagner, by means of the property here in controversy, and by the issuance of written notices to

Smith, Ledbetter, and Stearns.   On September 25, 1893, Smith, Led-
better, Stearns, and Wagner met and elected Smith, Ledbetter, and
Stearns a board of directors for the Quanah Publishing Company.
Thereupon this board elected Smith president, Ledbetter vice-presi-
dent, and Stearns secretary and treasurer of the company.   Smith, as
president, then and there employed W. D. Wagner to operate the
property in the publication and printing of a newspaper, to be known
as the Quanah Tribune.

The property was worth $1200.

*Opinion.*—We overrule the first assignment, complaining that the
court erred in finding as a fact that F. M. Marple owned all of the
stock of the Quanah Publishing Company, and had paid all its in-
debtedness.   It is contended that this finding is erroneous, because of
the fact that 65 shares of the stock had been hypothecated in the man-
ner indicated by us with the City National Bank.   This hypotheca-
tion constituted, we think, a pledge only of the stock to the bank.
The title yet remained with Marple; and this because of the absence of
any transfer by indorsement by him.   The mere delivery of the stock
as a pledge would not pass the title to the pledgee.   It would indeed
create a right in the bank as pledgee, by virtue of which it could re-
sort to equity if its security was in any way threatened.   18 Am. and
Eng. Encyc. of Law, 610, 611.

The facts fully justify the conclusion, found by the trial court and
by us, that the levy sought to be made by the constable upon the
stock was not in accordance with the manner provided by our Revised
Statutes; that is, that the constable failed to leave notice with any
officer of the corporation, as prescribed by article 2294, Revised
Statutes.

The eighteenth finding of fact, complained of in the fourth assign-
ment of error, is justified by the evidence; and if the ninth and tenth
findings, referred to in the second and third assignments, be errone-
ous they are immaterial.   Such is also the case with the nineteenth
finding of fact, complained of in the fifth assignment of error.

It is urged in the sixth assignment that the court erred in its finding
of fact, that possession of the property was demanded of Duncan G.
Smith and refused.   The court also found that such a demand had
been made of W. D. Wagner, and this is fully sustained by the rec-
ord.   The undisputed evidence shows that Wagner refused to deliver
possession of the property, because he was acting in obedience to the
commands of Smith.   If Wagner was guilty of conversion, it was be-
cause, having received the property as the agent or the tenant or the
bailee of the plaintiff, he continued to hold it in violation of his con-
tract.   No demand, therefore, upon him was necessary, in order to
sustain the action of conversion; and as he was but the confederate
of Smith, no demand was required as against the latter.   Smith must
be deemed the abettor of Wagner in assuming to control the prop-

erty in violation of the contract by which Wagner undertook to hold it in recognition of the right of plaintiff. Bank v. Jones, 18 Texas, 811; Hagood v Elson, 21 Texas, 506.

The court found as its first conclusion of law, that by the sale to Marple in 1891 the plaintiff became the owner of the property in controversy. This conclusion is assailed in the seventh assignment of error. It is apprehended that this transaction could not bring about a dissolution of the corporation so as to affect the rights of the State or of creditors, nor so as to prevent the corporation from being sued; but it does not follow that as to one not a creditor, or not acting in right of the State, the transaction referred to is wholly without efficacy. The purpose of our laws with reference to the government of private corporations, as announced in our Constitution (article 12, section 2), is to "provide fully for the adequate protection of the public and of the individual stockholders." Where, therefore, as in this instance, the rights of the public nor of the stockholders are in any sense impinged upon, it is not perceived why the transfer made by the officers of the corporation by and with the appellee as the sole representative of its stock should not pass title to the property transferred, in consideration to the surrender of that stock, as against a stranger, such as the trial court held the appellants to be. Neither the State nor any creditor complains, as far as this record shows.

In this connection, we find the following language in Taylor on Corporations: "In an ordinary business corporation, where the rights of the public do not intervene, it is within the power of the body corporate, by a vote of the majority of shareholders, to discontinue the corporate business." Sec. 431. In this transaction all the shareholders were represented in the person of the appellee. See also 2 Waterm. on Corp., sec. 418; Treadwell v. Salisbury Mfg. Co., 7 Gray, 393-404.

The court correctly held, that the levy upon the shares of Marple in the publishing company and the sale thereof by the constable were void, and passed no title to the purchasers Smith, Ledbetter, and Stearns; and this because no notice of such a levy was left with any officer of the corporation. Sayles' Civ. Stats., art. 2294; Keating v. Stone Co., 83 Texas, 471.

As Smith, Ledbetter, Stearns, and Wagner secured no title by virtue of the levy and sale referred to, it follows that they were without authority to take possession of the property in controversy in behalf of the corporation. The three first named were strangers to the corporation and to the property, and if they took possession of it should be regarded as trespassers. The last named, Wagner, had obtained possession of the property by virtue of a contract with Marple, and according to all the rules of good faith and fair dealing, he was in no attitude to repudiate the right under which he held it; and having without authority violated his contract, he became thereafter a trespasser, and guilty of conversion. Hence follows, also, the conclusion that the control of the property thus exercised by Smith and Wagner

amounted to a conversion thereof, for the value of which they became personally liable to the plaintiff.

As Smith was without title to the property, and as Wagner, cooperating with him, assumed control over it in violation of the title previously recognized by him of the plaintiff, it is believed that the appellee was entitled to maintain this suit upon his prior possession, without reference to the validity of the transfer to him by the officers and directors of the corporation. The appellant Wagner obtained possession of the property as tenant or bailee. He thereby recognized the title of the plaintiff, and he, acting alone or with others, should not be permitted to repudiate this relation. The possession of the plaintiff of this property was prima facie evidence of title in him. That possession, transferred to the appellant Wagner by virtue of a contract of lease, constituted such title as that the latter, or one acting with him, should not be permitted to deny it, unless he should connect himself with some outstanding title of a superior character. Grooms v. Rust, 27 Texas, 231; Hudson v. Willis, 73 Texas, 256. Such seems to be properly the rule with reference to all property, real and personal. Flannagan v. Pierson, 61 Texas, 305; Tyler v. Davis, 61 Texas, 674; Woodhouse v. Railway, 67 Texas, 416; McKie v. Anderson, 78 Texas, 207; Fowler v. Simpson, 79 Texas, 611.

If the court erred in failing to render a judgment against John E. Ledbetter and Eugene Stearns, as well as against W. D. Wagner and Duncan G. Smith, this affords no reason for reversing and remanding the cause. It does not prove that the judgment was erroneous as against them as wrongdoers.

The judgment is affirmed.

*Affirmed.*

Delivered May 15, 1895.

Writ of error refused.