[Sac. No. 1002.   Department One.—October 17, 1903.]

## DELIA HALL, Appellant, v. FRANCIS CAYOT, Executor, etc., of Phillip Doray, Deceased, Respondent.

ESTATES OF DECEASED PERSONS—CLAIM TREATED AS REJECTED—ALLOW-
ANCE PENDING SUIT—JUDGMENT FOR COSTS.—Where a claim upon a note of a deceased person was treated as rejected under the statute, and pending action thereon was approved and filed as an allowed claim, a judgment for costs is the full extent of relief to which plaintiff was thereafter entitled. A judgment upon the claim could have no greater effect than that of an approved claim.

[1] 63 Am. St. Rep. 108.

ID.—REJECTED NOTE—SECURITY—UNINDORSED STOCK—CERTIFICATE OF
SECRETARY—EQUITABLE LIEN—ORDER OF SALE AGAINST EXECUTOR.
—Where the note of a decedent was intended to be secured by his
delivery to the payee of an unindorsed certificate of stock standing
upon the books of a corporation in his name, which intention was
evidenced by a certificate of the secretary of the corporation in-
dorsed thereon, stating the object of the delivery, such delivery
created an equitable lien upon the stock, which was good and en-
forceable as between the parties. In an action upon the rejected
note and security against the decedent's executor, the plaintiff is
entitled to enforce both the note and the security, and to have
an order of sale of the stock as against the executor, who occupies
the same position which the decedent would have occupied had he
lived.

APPEAL from a judgment of the Superior Court of Plu-
mas County. C. E. McLaughlin, Judge.

The facts are stated in the opinion of the court.

Goodwin & Webb, for Appellant.

G. G. Clough, for Respondent.

ANGELLOTTI, J.—This is an action upon two claims
against Phillip Doray, deceased, which were duly presented
for allowance to the executor of his will, and which, because
of the neglect and failure of such executor to indorse his
allowance or rejection thereon within ten days after such pres-
entation, plaintiff elected to consider rejected.

One of the claims was based upon a promissory note of the
deceased. The action was commenced on the twenty-fourth
day of May, 1900, and on the next day the said claim, having
been allowed by the executor, was delivered by him to the
judge, allowed by him, and on May 26, 1900, filed with the
clerk of the court. The allowance of the claim is alleged by
the answer, and the allegation is found to be true by the court.
The other claim was also based upon a promissory note, the
same being for $3,200, which was given by deceased to plain-
tiff for a former note for $2,669 and interest, given by deceased
to the husband of plaintiff, who afterwards died, and from
whom plaintiff had acquired the note as heir to his estate.
At the time of giving such original note deceased delivered
to the payee named therein a certificate for nineteen hundred

shares of the capital stock of the Pacific Gold Mining Com-
pany, as collateral security for the payment of the note, said
certificate then bearing the following indorsement, viz.:—

"$2669.00.

"The within nineteen hundred (1900) shares of stock are
hypothecated to secure the payment of a certain promissory
note, made and executed the 13th day of September, A. D.
1886, by Phillip Doray, to Robert Hall, for the sum of two
thousand six hundred and sixty-nine dollars, due July 1,
1888. John K. Wall, Secretary,"

said Wall then being the secretary of the corporation. Plain-
tiff's husband retained said note and the said certificate of
stock to the time of his death, when plaintiff succeeded, as
his heir, to said note and to the possession of said certificate
of stock, and when deceased executed the $3,200 note, he left
with plaintiff the certificate of stock, to be held by her as col-
lateral security for the payment of said note.

There was never any writing or memorandum between the
deceased and either plaintiff or her husband as to said collat-
eral security, or showing the purpose for which the certificate
was delivered by deceased, except the indorsement already
recited, signed by the secretary of the corporation, and neither
the transfer nor anything tending to show that the certificate
was held by plaintiff or her husband as collateral security or
otherwise was ever entered upon the books of the corporation.

The foregoing facts are shown by the findings and such alle-
gations of the complaint as are admitted by the answer. The
trial court decided as to the first claim that, as the claim had
been allowed after the commencement of the action, and the
plaintiff thereby secured in all her rights, she was not entitled
to judgment therein. As to the second claim, it decided that
plaintiff was not entitled to a lien upon the certificate of stock,
or the shares represented thereby, or a decree of sale therefor,
but that she was entitled to judgment thereon for $4,441.15,
and interest from May 12, 1900, and her costs of suit, payable
in due course of administration.

Judgment was entered accordingly, and plaintiff appeals
upon the judgment-roll from that portion of the judgment
denying her relief on the first claim, and from that portion
thereof adjudging that she has no lien on the certificate of

stock or the shares represented thereby, and adjudging that she is not entitled to judgment directing the sale thereof to satisfy her demand. No brief has been filed by counsel for respondent, and we are therefore without the benefit of his views on the questions presented by this appeal.

1. As to the first claim, the judgment was not erroneous. The sole object of an action upon a rejected claim for money is to place it among the allowed claims against the estate. A judgment rendered against an executor or administrator upon any claim for money against the deceased only establishes the claim in the same manner as if it had been allowed by the executor or administrator and the judge (Code Civ. Proc., sec. 1504), and such a judgment is no more effectual as an estoppel than an allowance of the claim would be, for it can be contested by the heirs on the settlement of an account in the same manner as a claim allowed by the executor or administrator and judge can be contested. (Code Civ. Proc., sec. 1636; *Estate of More,* 121 Cal. 635.) It having been found, in accordance with the allegations of the answer, that the claim had been regularly allowed, approved, and filed after the commencement of the action, the plaintiff was not entitled to an additional allowance thereof, and consequently was not entitled to judgment thereon, except possibly for her costs, which were awarded her.

2. The action of the trial court in adjudging that plaintiff has no lien upon the certificate of stock, or upon the shares of stock represented thereby, to secure the note on which the second claim is founded, and in refusing her an order for the sale thereof, was undoubtedly based upon the fact that there was no written transfer of the stock on the part of deceased, and no transfer in the manner provided by section 324 of the Civil Code. That section provides that shares of stock are personal property, "and may be transferred by indorsement by the signature of the proprietor, his agent, attorney, or legal representative, and the delivery of the certificate; but such transfer is not valid, except as to the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by whom and to whom transferred," etc. In this case there was no delivery of the possession of the stock other than such as was accomplished by

the mere delivery of the certificate, with the indorsement of
the secretary of the corporation as to the purpose thereof.

It is well settled in this state by decisions construing this
statutory provision that the entry upon the books of the cor-
poration is not essential to the validity of the transfer, except
as to purchasers and transferees "in good faith, for value
and without notice." (*Spreckels* v. *Nevada Bank,* 113 Cal.
272;[1] *Farmers' Bank* v. *Wilson,* 58 Cal. 600; *Winters* v. *Bel-
mont Min. Co.,* 53 Cal. 428; *People* v. *Elmore,* 35 Cal. 653.)
The rights of any such third parties not being here involved,
the provision of the statute as to entry on the books of the cor-
poration is not applicable, and the finding thereon is imma-
terial.

There remains to consider the effect of the absence of in-
dorsement by signature, or other writing signed by the owner
of the stock. In considering this question it must be borne in
mind that the defendant executor occupies the same position
that the deceased would have occupied had he lived, and that
there is no question in the case as to the rights of any third
party. The intent of the deceased to hypothecate the shares
of stock as collateral security is very clearly shown by his de-
livery of the certificate therefor, with the certificate of the
secretary of the corporation, indorsed thereon, which certifi-
cate fully stated the object of the delivery, and which he, by
his delivery, practically adopted as his own statement.

It appears to be well settled that incorporeal property, such
as shares of stock in a corporation, cannot, technically speak-
ing, be pledged without a written transfer of title or its
equivalent. The theory underlying this rule is, that as such
property,—viz., the shares of stock, as distinguished from the
certificate therefor, which is but the muniment or evidence
of title of the holder to a portion of the property of the cor-
poration—is incapable of manual delivery, and as delivery of
possession is essential to the validity of a pledge, a delivery
of the certificate without a transfer in writing which will
enable the holder to make a transfer of the stock to his own
name on the books of the corporation is not a complete deliv-
ery, for it does not place the stock in the full control of the

---

[1] 54 Am. St. Rep. 348.

pledgee. While the authorities generally recognize the necessity of an indorsement or other writing to effectuate a transfer of the title to the shares, and to create a valid pledge, it will be found upon examination that the mere delivery, by way of pledge, of the certificate without indorsement is acknowledged by the various text-writers to have been held to vest in the pledgee an equitable title to the shares, which may be enforced *as between the parties.* (Cook on Stocks and Stockholders, sec. 465; Jones on Pledges and Collateral Securities, sec. 152; 18 Am. & Eng. Ency. of Law, 1st ed., 611.) The various cases cited to support the doctrine enunciated as to the necessity of a writing to create a valid pledge will be found to be cases where the rights of third parties were involved. (See *Cumming* v. *Prescott,* 2 Younge & C. 488; *Nisbit* v. *Macon Bank etc. Co.,* 12 Fed. 686; *Wagner* v. *Marple,* 10 Tex. Civ. App. 505.) The decisions in *Cumming* v. *Prescott,* 2 Younge & C. 488, and *Wagner* v. *Marple,* 10 Tex. Civ. App. 505, both recognize the doctrine that where there is a delivery of the certificate with the clear intent thereby to pledge the stock, an equitable right is created in the person to whom the delivery is made, which may be enforced in equity, as between the parties. (See, also, *Rice* v. *Gilbert,* 173 Ill. 349.) In no case that we have been able to find, where the controversy was between the original parties, and the rights of third parties had not intervened, has a contrary doctrine been enunciated. The precise question appears never to have been decided by this court. In some of the cases to be found in our reports it is apparent that there was nothing beyond a mere delivery of the certificate, but the question in each of these cases was as to the rights of third parties, and in the case of *Brewster* v. *Hartley,* 37 Cal. 15,[1] the question was not involved.

We can see no reason why the well-established rule "that an agreement in writing to give a mortgage, or a mortgage defectively executed, or *an imperfect attempt* to create a mortgage, or *to appropriate specific property to the discharge of a particular debt,* will create a mortgage in equity, or a specific (equitable) lien on the property intended to be mortgaged" (*Daggett* v. *Rankin,* 31 Cal. 321; *Higgins* v. *Manson,* 126 Cal. 467 [2]) is not applicable to the case at bar. Mr. Pome-

---

[1] 99 Am. Dec. 237.                    [2] 77 Am. St. Rep. 192.

roy, in his Equity Jurisprudence, says that a merely verbal agreement may create such a lien on personal property, enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice; and that equity looks at the final intent and purpose rather than the form, and if the intent appear to pledge certain property as security for an obligation, the lien follows. (Pomeroy's Equity Jurisprudence, secs. 1235-1237.) There was here a clear attempt to hypothecate the shares of stock represented by the certificate delivered to the creditor as security for the note. The debtor undoubtedly intended, in placing the certificate of ownership of his shares in the possession of his creditor, to pledge these shares as security for the performance of his obligation, and the creditor received the certificate with the understanding that the shares were to be retained as such security. If the attempt to appropriate these shares as such security was imperfect by reason of the absence of indorsement or other writing signed by the debtor, equity will, in the absence of intervening rights of third parties, looking at the intent rather than the form, "treat the subject-matter as to collateral consequences and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been." (*Daggett* v. *Rankin,* 31 Cal. 321.) It will, as between the parties, treat the property as pledged, and allow the creditor to enforce in this proceeding the lien attempted to be created. (*Higgins* v. *Manson,* 126 Cal. 467.[1])

We are of the opinion that upon the findings of fact the plaintiff should be held entitled to a lien upon the shares of stock evidenced by the certificate and to an order of sale thereof to satisfy the claim embraced in her second cause of action.

As to the first cause of action, the judgment is affirmed. As to the second cause of action, the portion of the judgment appealed from is reversed, with directions to the court below to enter judgment in accordance with the views herein expressed.

Shaw, J., and Van Dyke, J., concurred.

---

[1] 77 Am. St. Rep. 192.