(No. 6799. November 29, 1940.)

LEONORE D. DOWD, Respondent, v. THE ESTATE OF DAVID F. DOWD, Deceased, Appellant, and DAVID G. DOWD, GERTRUDE (DOWD) BARTLETT, JENNY (DOWD) BENTHIN, Intervenor-Appellants.

[108 Pac. (2d) 287.]

Rehearing denied January 3, 1941.

158

Alvin Denman, for Appellant Estate.

Otto E. McCutcheon, for Respondent.

AILSHIE, C. J.—Respondent, Leonore D. Dowd, is the widow of David F. Dowd, deceased, and is the administratrix of her husband's estate. She had a claim against "The Estate of David F. Dowd. Deceased," and in conformity with the provisions of sec. 15–621, I. C. A., the claim was presented to the probate judge who rejected the same; thereupon she instituted an action in the district court against the estate and recovered a judgment. "The Estate of David F. Dowd, Deceased," appealed from the judgment as did also David G. Dowd, Gertrude Dowd Bartlett and Jenny Dowd

Benthin, who as heirs of the decedent had intervened in the case. Respondent has moved to dismiss the appeal on the following grounds:

"1.

"That the appellant, 'The Estate of David F. Dowd, deceased', is not an aggrieved party which may appeal under the provisions of Section 11–103, Idaho Code Annotated.

"2.

"That an 'Estate' which is sued by that name or that appellation, under the provisions of Section 15–621, Idaho Code Annotated, may not appeal to the Supreme Court from a judgment of the District Court establishing the claim of a claimant as defined in said section of said code.

"3.

"That there is no statutory authority within this state authorizing an 'Estate' to bring suit or defend an action except the power to defend an action under the provisions of said section 15–621, I. C. A."

Taking up the grounds of the motion in the order in which they are stated, it would seem that the first contention is answered by this court in *State v. Eves*, 6 Ida. 144, 148, 53 Pac. 543:

"The test as to whether a party is aggrieved or not is: 'Would the party have had the thing if the erroneous judgment had not been entered?' If the answer be yea, he is a party aggrieved.'" (*Washington County Abstract Company v. Stewart*, 9 Ida. 376, 381, 74 Pac. 955.)

These cases have been cited and the rule there stated followed continuously ever since it was announced: *Hanson v. Weniger*, 31 Ida. 540, 543, 173 Pac. 1085; *Rural High School Dist. No. 1 v. School Dist. No. 37*, 32 Ida. 325, 329, 182 Pac. 859; *Oatman v. Hampton*, 43 Ida. 675, 691, 256 Pac. 529; *Renfro v. Nixon*, 55 Ida. 532, 537, 45 Pac. (2d) 595; *In re Blades*, 59 Ida. 682, 684, 86 Pac. (2d) 737, and cases there cited; *State ex rel. Murphy v. Superior Court, etc.*, 30 Ariz. 620, 249 Pac. 768, 770; *Kondas v. Washoe County Bank*, 50 Nev. 181, 254 Pac. 1080, 1081.

Here the *estate* will have to pay the judgment if it is not reversed, vacated or modified. The estate is therefore aggrieved.

Under the second and third grounds of the motion, it is contended that an "estate" as such cannot appeal because it is not so authorized and has no identity. We will consider these two grounds together and to do so it is necessary to consider the terms of the statute authorizing presentation and prosecution of claims against an estate and the right of appeal. Secs. 15–604 and 15–605 provide for the presentation of claims and sec. 15–607 provides that

"When a claim, accompanied by the affidavit required in this chapter, is presented to the executor or administrator he must, within sixty days after its receipt, indorse thereon, his allowance or rejection, with the day and date thereof."

Sec. 15–608 provides that every claim, allowed by the executor or administrator and approved by the probate judge, must be filed in the probate court, and thereafter must "be ranked among the acknowledged debts of the estate, to be paid in due course of administration"; and sec. 15–609 provides:

"When a claim is rejected, either by the executor or administrator, or the probate judge, the holder must bring suit in the proper court against the executor or administrator, within three months after notice of its rejection."

It should here be observed that the action on a rejected claim, presented to the administrator or executor, must be commenced "against the executor or administrator," so there is no doubt about the designation of the party defendant in such cases. Sec. 15–621 provides for the extraordinary condition which arises when an executor or administrator has a claim against the estate he is administering. In such case, if the claim is rejected by the probate judge, "action thereon may be had against the estate by the claimant," the section in full reading as follows:

"If the executor or administrator is a creditor of the decedent, his claim, duly authenticated by affidavits, must be presented for allowance or rejection to the probate judge, and its allowance by the judge is sufficient evidence of its correctness, and it must be paid as other claims, in due course of administration. If, however, the probate judge rejects the claim, action thereon may be had against the estate by the claimant, and summons must be served upon the probate

judge, who may appoint an attorney at the expense of the estate to defend the action. If the claimant recovers no judgment, he must pay all costs, including defendant's attorney's fees.''

It seems quite clear, from the change of language used in the last quoted section, that it was the intention of the legislature to require the action to be against the *estate of the deceased* where the claim is prosecuted by the administrator or executor, after it has been rejected by the probate judge. It was not the intention to have the action prosecuted *against the probate judge,* although the statute provides that the summons shall be served on the probate judge and that he shall appoint an attorney, at the expense of the estate to defend the action.

It is further contended that the ''estate'' cannot appeal, for various reasons, among which it is contended, the judgment merely establishes the claim and that it is not a final judgment within the meaning of the statutes authorizing appeals from district courts. (Sec. 11–201, I. C. A.) That contention was answered by this court in *McElroy, Administrator, v. Whitney, Administratrix,* 24 Ida. 210, 214, 133 Pac. 118, in which the court determined *when* such a judgment became final and, among other things, said:

''The judgment entered on May 1, 1912, was the final judgment in this action, and the amendment merely a correction, which was in fact not necessary to make the judgment conform to said provisions of the statute.''

The judgment of the district court rendered on the verdict of the jury was just as much a final judgment as the judgment entered on any other claim or demand, which might have been prosecuted against any individual or corporation. (*Poage v. Co-op. Pub. Co.,* 57 Ida. 561, 66 Pac. (2d) 1169, 110 A. L. R. 1322, and cases cited; sec. 11–201, I. C. A.)

It has been argued that under secs. 15–1115, 15–1118, and 15–1119, I. C. A., all claims allowed and judgments upon claims presented and disallowed are subject to objection and contest on hearing of the final report and settlement of account of the administrator or executor and are therefore not final. Clearly, such is not the case as to heirs and beneficiaries of the estate who are made parties and ap-

pear and defend in an action prosecuted against the estate upon a rejected claim. In such case, they have already had their day in court and the judgment has become final as to them.

The motion to dismiss the appeal is denied.

Before entering upon a consideration of the appeal on the merits, it is deemed advisable to state in more detail the essential facts involved: Respondent and David F. Dowd were married December 26, 1914; at the time of their marriage, respondent owned separate property of the probable value of $15,000. From July 14, 1914 (prior to their marriage), to June 21, 1921, respondent loaned Dowd sundry amounts, ranging all the way from a minimum of $11 in one loan, thence up to $1,020 in the maximum loan, aggregating the sum of $11,496.04. On these advances Mrs. Dowd computed interest from the date of each loan to the later date of presentation of claim in the probate court. After these various loans had been made and on October 22, 1930, Mr. Dowd executed and delivered to respondent the document, referred to as Exhibit ''A'' and sometimes called the ''blue paper,'' a copy of which is as follows:

''ACKNOWLEDGMENT OF INDEBTEDNESS AND AGREEMENT.

I, David F. Dowd, husband of Leonore D. Dowd, do hereby acknowledge that I have received from Leonore D. Dowd, out of her personal funds and separate property, the sum of Eleven Thousand Five Hundred Dollars ($11,500.00), which said sum has been invested by me in the property known as the Dowd-Bucklin property, situated on the Southeast corner of Park Avenue and 'B' street, in the city of Idaho Falls, Idaho.

I hereby agree that the said sum shall be a charge upon my portion of the said described real estate, and shall be deemed and considered as an investment of the said Leonore D. Dowd in the aforesaid property, re-payable to her when the said property is sold, or, if not sold, payable to her out of my estate upon my death.

For the purpose of acknowledging the said indebtedness and its re-payment, I hereby promise and agree that the said

sum shall be paid to her upon the sale of said property, or, whichever happens first, immediately upon my death.

IN WITNESS WHEREOF, I have hereunto set my hand this 22nd day of October, 1930.

Signed, D. F. Dowd.

State of Idaho, } ss.
County of Bonneville }

On this 22nd day of October, 1930, before me, the undersigned Notary Public, personally appeared David F. Dowd, known to me to be the person whose name is subscribed to the above and foregoing acknowledgment of indebtedness and promise to pay, and who acknowledged to me that he executed the same, and for the purpose therein stated.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year last above written.

O. A. Johannesen
Notary Public.
Residence and Address:
(SEAL) Idaho Falls, Idaho.''

April 26, 1933, Dowd executed and delivered to his wife a note and mortgage for $11,000 to cover his existing indebtedness to her and thereupon she returned to him Exhibit ''A'' (the agreement above set out). During the month of June, 1933, they were divorced and November 3d of that year they remarried. There was a first mortgage on the property, securing a large indebtedness due to John W. Cage, and on the latter's death, it became necessary to refinance the property by borrowing money from a new source. January 24, 1934, Mrs. Dowd executed a release of the (second) mortgage and delivered the mortgage, note, and release to Mr. Dowd who, at the same time, redelivered to her the ''blue paper'' (Exhibit ''A''). This latter transaction appears to have taken place because of Dowd's necessity to secure a loan on the property covered by this mortgage. The parties remained husband and wife from November 3, 1933, until the death of Mr. Dowd, April 6, 1938.

The total claim preferred was for $11,496.04 principal and accrued interest in the sum of $14,347.13. After the claim

was rejected by the probate judge, respondent filed her action in the district court and, among other things, set out the claim in full as presented to the probate judge, the action of the judge thereon and prayed judgment against the estate for the "sum of $11,496.04 with interest as may be allowed by law on the specific items going to make up the account stated referred to in the writing of October 22nd, 1930, less the said sum of $350.00 credited on said account." The latter amount was paid by check of Mr. Dowd, at respondent's instance and request, for a debt owed by respondent to Mrs. Sylvia Mott.

Prior to entering upon the trial and upon the motion of the defendant, the court entered an order requiring the

"plaintiff to elect between the cause of action against the defendant for any loan to the decedent during his lifetime by the claimant from her separate property and the cause of action alleged in said complaint on the acknowledgment of indebtedness and agreement"

set out in the claim in the probate court and the complaint as filed in the district court.

In compliance with the foregoing order of the court, respondent filed a notice of election of remedies in which she said:

"the plaintiff hereby elects to pursue her cause of action on the written contract a copy of which is set up as a part of paragraph 15 in plaintiff's said complaint."

The jury returned their verdict in favor of respondent and against the estate for the sum of $12,380.28 and judgment was thereafter entered upon the verdict.

Two principal contentions are urged here for a reversal of the judgment: (1) That the complaint is insufficient to state a cause of action, on which respondent elected to proceed in the trial and is not the same cause of action stated in the claim as presented to the probate judge; and that such claim is insufficient and inadequate to support the action or a verdict and judgment thereon. Appellant cites and relies on *Vanderpool v. Vanderpool*, 48 Mont. 448, 138 Pac. 772, and *Flynn v. Driscoll*, 38 Ida. 545, 557, 223 Pac. 524, 34 A. L. R. 352, in support of the contention that the creditor

"could not come into court and allege or prove any other or different cause of action than that stated in the claim."

The rule stated in these cases is sound and not open to serious debate in this court. The main question to be determined is: Does the claim presented in this case give notice to the probate judge and all persons interested in the estate of the character and nature of the claim asserted by the creditor; and does it furnish the legal representative of the estate with sufficient information to enable him to properly investigate the claim before allowing or rejecting it? That is the purpose, of course, of requiring the claim to be properly made out, verified and presented to the probate court.

When we turn to the claim here under consideration, we find that respondent has set out in her complaint a full and true copy of the claim as she presented it to the probate judge. The written acknowledgment, dated October 22, 1930, of the indebtedness and a promise to pay, was founded upon a good and valuable consideration, namely, the extension of time for payment. The exact date of maturity is not specified but the agreement contains a statement of the event that must happen in order to mature the obligation, which was absolutely certain to occur. The contract says:

"said sum has been invested by me in the property known as the Dowd-Bucklin property"

(followed by statement of exact location of the property) and further recites:

"I hereby agree that the said sum shall be a charge upon my portion of the said described real estate, and shall be deemed and considered as an investment of the said Leonore D. Dowd in the aforesaid property, repayable to her *when the said property is sold,* or, *if not sold,* payable to her out of my estate *upon my death.*" (Italics supplied.)

It was known at the time this agreement was signed that one of these events would be sure to occur, that is, the debtor would either sell the property in his lifetime, in which event the debt would mature, or if he didn't sell it, he was sure to die some time, which alternative would mature the debt. The order of the trial court, requiring an election in no way changed the status of the claim; it was still an action

on contract. (*Darkell v. Coeur d'Alene etc. Trans. Co.,* 18 Ida. 61, 108 Pac. 536.)

The written acknowledgment granting the extension of time for payment, while it was for a lump sum of $11,-500, was merely an acknowledgment of the already existing indebtedness and coupled with an extension of time for payment, which prevented the running of the statute of limitations against the original loans. The contention that the acknowledgment of indebtedness disproved the existence of the contract to pay the loans is without merit. It is very clear that it is all the same indebtedness; the obligations to pay are merely consolidated and reduced to a single promise to pay the whole in accordance with the terms of the written agreement or acknowledgment of October 22, 1930.

(2) Appellant further contends that error was committed in allowing the respondent to testify concerning certain transactions had in connection with these loans and the written acknowledgment of indebtedness, for the reason that her testimony was inhibited by sec. 16–202, I. C. A., which reads in part as follows:

"Who may not testify. The following persons cannot be witnesses: . . . . 3. Parties. . . . . against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any communication, or agreement, not in writing, occurring before the death of such deceased person."

In considering the 1927 amendment to our statute (1927 Sess. Laws, chap. 51, p. 67, sec. 16–202, I. C. A.) in *Hubbard v. Ball,* 59 Ida. 78, 84, 81 Pac. (2d) 73, we said:

"The amendment limits the prohibition of the statute to testimony 'as to any communication, or agreement, not in writing, occurring before the death of such deceased person.' Respondent was competent to testify as to services performed by him for deceased and as to the value thereof. . . . . "

This statute was evidently changed for a purpose and that purpose must have been to *relax* instead of *restrict* the rule. By the original statute (sec. 7936, C. S.) the testimony was prohibited "as to *any matter of facts* occurring before the death of such deceased person," whereas the amendment only prohibits testimony *"as to any communica-*

*tion, or agreement, not in writing,* occurring before the death of such deceased person." (Italics supplied.) By the amendment, there is no prohibition against a claimant testifying to *occurrences* in relation to or in connection with a contract or agreement in writing; such, for example, as delivery of the agreement, possession thereof, and payment or nonpayment, or rendition of services, or furnishing goods or material thereunder, and similar facts or circumstances. On the other hand, the prohibition extends to and comprehends contracts and agreements *not* in writing.

The essence of the objections to the question and the testimony admitted is contained in and illustrated by the following question and answer:

Q. "What occurred in January, Nineteen thirty-four, with relation to the mortgage and note referred to and this blue paper, Exhibit 'A'?

A. "Mr. Dowd was heavily involved at this time, and it was necessary for us to refinance, and in order to get the money to refinance the building, and bring it up where it should be, the mortgage company wouldn't loan the money unless I released the mortgage; and I did this, and in return for giving him the mortgage and the note I received the blue paper to keep until I was paid."

After argument by the respective counsel, touching this question and answer, the court ruled as follows:

"Well, her statement for the purpose of its delivery, I think, is objectionable. That latter part of the answer will be stricken. The fact of its delivery, of course, remains in the record."

Thereupon Mrs. Dowd further testified that she had had this document (Exhibit "A", the "blue paper") in her possession ever since it was redelivered to her in January, 1934, and that nothing had ever been paid on it except $350 February 2, 1936.

The contention is made that the testimony relating to the release of the mortgage and the return of the mortgage and note to Mr. Dowd, and the redelivery to Mrs. Dowd of the agreement (Exhibit "A") was in effect testimony establishing a new and independent contract. Such conten-

tion though plausible is unsound. The promise to pay, on the happening of one of the two alternatives, was in writing and testimony of the delivery, continuous possession of the writing, happening of the maturity contingency, and nonpayment of the debt, were all touching facts which arose after the "agreement" was "in writing." The contract itself was evidenced by the writing; in such circumstance the other facts involved were subsequent and collateral to the writing and testimony concerning the same was not prohibited by the statute.

There is sufficient *competent* evidence to support the verdict.

Appellant also complains of the action of the court in requiring arguments to be made before instructing the jury. It is contended that, under sec. 7–206, I. C. A., it was the duty of the court to give his instructions to the jury before the arguments of counsel were made. All we find in the record, touching this matter, is as follows: After the conclusion of all the evidence in the case:

The COURT: " . . . . You may open the argument.

(Counsel for the respective parties then argued the case to the jury. And the argument being concluded—)

The COURT: "We will recess at this time."

No request appears to have been made by counsel in relation to the matter, nor does it appear that any objection was made or exception taken.

In *Schmidt v. Williams,* 34 Ida. 723, 732, 203 Pac. 1075, this court said:

"The record does not disclose that appellants interposed any objection to the order of procedure adopted by the trial court, or requested the court to proceed in the order indicated by the statute. Had such objection or request been made, the case might be different. We do not think such a departure as this from the order prescribed by the statute should be held to be reversible error, in the absence of such request or objection."

(See, also, *Byington v. Horton,* 61 Ida. 389, 102 Pac. (2d) 652, 657.)

The judgment will be affirmed, and it is so ordered, with costs to respondent.

Givens and Holden, JJ., concur.

MORGAN, J., Concurring.—I am in accord with the foregoing opinion except the following portion thereof:

"It has been argued that under secs. 15–1115, 15–1118, and 15–1119, I. C. A., all claims allowed and judgments upon claims presented and disallowed are subject to objection and contest on hearing of the final report and settlement of account of the administrator or executor and are therefore not final. Clearly, such is not the case as to heirs and beneficiaries of the estate who are made parties and appear and defend in an action prosecuted against the estate upon a rejected claim. In such case, they have already had their day in court and the judgment has become final as to them."

The question as to whether the heirs and beneficiaries of an estate, who are made parties and appear and defend in an action prosecuted against it arising out of a rejection by a probate judge of a claim, by an executor or administrator, are precluded, by a judgment in favor of the claimant, from contesting the claim on hearing of the final report and settlement of account, is not before us for decision. Such a question cannot arise for adjudication until the report has been filed and objection thereto has been made by an heir or beneficiary who has participated in litigation like that now before us. A decision as to whether the judgment appealed from in this case precludes objection, by the heirs, to the allowance of the claim of the administratrix, in her final account, is premature.

BUDGE, J., Dissenting.—The record discloses that respondent, the wife of the deceased, was appointed administratrix of deceased's estate, The Estate of David F. Dowd. Respondent claimed that certain alleged separate funds of herself made up a part of the estate of the deceased and she presented her claim therefor as a creditor to the probate judge for allowance under the provisions of section 15–621, I. C. A., and the claim was rejected. Respondent then filed

suit in the district court of Bonneville county as provided in said section 15–621, I. C. A., naming "The Estate of David F. Dowd, deceased," as the only defendant. Five other alleged heirs of the deceased intervened in this suit. The case was tried to a jury resulting in a verdict in favor of respondent, whereupon judgment was entered on the verdict with the usual order that the claim be paid *"in due course of administration."* Three of the interveners, David G. Dowd, Gertrude Dowd Bartlett and Jenny Dowd Benthin, filed notice of appeal and appealed from the above-mentioned order or judgment as well as The Estate of David F. Dowd, deceased. The motion to dismiss was directed specifically against the appeal of "The Estate of David F. Dowd, deceased."

Section 15–621, I. C. A., under which respondent presented her claim and upon rejection brought her suit, provides:

"If the executor or administrator is a creditor of the decedent, his claim, duly authenticated by affidavits, must be presented for allowance or rejection to the probate judge, and its allowance by the judge is sufficient evidence of its correctness, and it must be paid as other claims, in due course of administration. If, however, the probate judge rejects the claim, action thereon may be had against the estate by the claimant, and summons must be served upon the probate judge, who may appoint an attorney at the expense of the estate to defend the action. If the claimant recovers no judgment, he must pay all costs, including defendant's attorney's fees."

The rule appears well settled that a judgment rendered for the plaintiff in a proceeding brought under section 15–621, I. C. A., is not personal but merely establishes the claim against the estate *to the same effect as though the claim had been allowed against the estate by the probate judge.* (*In re More's Estate,* 121 Cal. 635, 54 Pac. 148; *Norton v. Norton's Estate,* 41 Cal. App. 614, 183 Pac. 214. See also *McElroy v. Whitney,* 24 Ida. 210, 133 Pac. 118.) In the case of *In re More's Estate, supra,* the court uses the following language:

"Section 1504 of the Code of Civil Procedure (Section 15–615 Idaho Code Annotated) provides:

'A judgment rendered against an executor or administrator, upon any claim for money against the estate of his testator or intestate, only establishes the claim in the same manner as if it had been allowed by the executor or administrator and the judge; and the judgment must be that the executor or administrator pay, in due course of administration, the amount ascertained to be due.' And section 1510 of the same Code (Section 15–621, I. C. A.) provides: 'If the executor or administrator is a creditor of the decedent, his claim duly authenticated by affidavit must be presented for allowance or rejection to a judge of the superior court, and its allowance by the judge is sufficient evidence of its correctness, and must be paid as other claims in due course of administration. If, however, the judge reject the claim, action thereon may be had against the estate by the claimant, and summons must be served upon the judge, who may appoint an attorney, at the expense of the estate, to defend the action.' The action of More against the Estate of More was brought, and the judgment recovered, under the last named section; *but we do not consider that the judgment had any greater force or effect than would a judgment recovered under the section first named.* It did, however, establish the claim in the same manner as if it had been allowed by the judge, and was *prima facie* evidence of its correctness. *The judgment was, however, subject to be afterwards contested by any person interested in the estate, in the same manner and to the same extent as other allowed claims might be contested.* But in all such cases the burden is upon the party contesting to show that the claim was not properly allowed. *In re Loshe's Estate,* 62 Cal. 413; *In re Swain's Estate,* 67 Cal. 637, 8 Pac. [497] 94.'' (Emphasis inserted.)

To the same effect see: *Saunders v. Simms,* 183 Cal. 167, 190 Pac. 806; *Morton v. Adams,* 124 Cal. 229, 56 Pac. 1038, 71 Am. St. 53; *Hall v. Cayot,* 141 Cal. 13, 74 Pac. 299; *Doehla v. Phillips,* 151 Cal. 488, 489, 91 Pac. 330.

Section 1504 of the Code of Civil Procedure of California contains provisions the same as those contained in section 15–615, Idaho Code Annotated, and likewise California Code of Civil Procedure, section 1510 is like section 15–621, Idaho Code Annotated. The courts of California considering provi-

sions of their statutes which are the same as sections 15–615 and 15–621, I. C. A., have announced and many times reiterated the rule that a judgment recovered under a statute containing the provisions of section 15–621, I. C. A., has no greater force or effect, but has the same force and effect, as a judgment recovered under the provisions of a statute such as section 15–615, I. C. A. The effect of a judgment under section 15–615, I. C. A., is announced in its provisions, namely:

"A judgment rendered against an executor or administrator upon any claim for money against the estate of his testator or intestate only establishes the claim in the same manner as if it had been allowed by the executor or administrator and the probate judge, and the judgment must be that the executor or administrator pay in due course of administration the amount ascertained to be due. A certified transcript of the judgment must be filed in the probate court. No execution must issue upon such a judgment, nor shall it create any lien upon the property of the estate or give to the judgment creditor any priority of payment."

From the foregoing provisions and from authorities construing such a section it appears that a so-called judgment obtained by the administratrix as a creditor against the estate, is not a final judgment, it is not subject to execution, it creates no lien upon the property of the estate and does not give to the judgment creditor any priority of payment, and such a judgment payable "in due course of administration" is subject to be afterwards contested by any person interested in the estate, in the same manner and to the same extent as other allowed claims might be contested.

In *Beckett v. Selover*, 7 Cal. 215, 229 [68 Am. Dec. 237; and *Estate of Schroeder*, 46 Cal. 304, 318, it is held that a judgment against an administrator stands on no better footing than an allowed claim, and that section 1504, California Code of Civil Procedure (sec. 15–615, I. C. A.) expressly declares them to be of same effect and the same rules apply to both, and that on an application for sale of real estate, heir or devisee may get behind an allowed claim or judgment against administrator and show the same is not justly due from the estate, but that the allowance of claim or judgment is *prima*

*facie* evidence of indebtedness and must be overcome by the contestant upon whom the burden of proof is cast. In other words, it has been held that a judgment against an administrator by a third party creditor and a judgment in favor of an executor or administrator, as a creditor, against the estate merely establishes the claim, leaving it subject to contest by any party interested.

In *Hall v. Cayot,* 141 Cal. 13, 74 Pac. 299, the court said:

"A judgment rendered against an executor or administrator upon any claim for money against the deceased only establishes the claim in the same manner as if it had been allowed by the executor or administrator and the judge (section 1504, Code Civ. Proc.), and such a judgment is no more effectual as an estoppel than an allowance of the claim would be, for it can be contested by the heirs on the settlement of an account in the same manner as a claim allowed by the executor or administrator and judge can be contested (section 1636, Code Civ. Proc.; *Estate of More,* 121 Cal. 635, 54 Pac. 148)."

See also: *Estate of Glenn,* 74 Cal. 567, 16 Pac. 396; *Finley v. Carothers,* 9 Tex. 517, 60 Am. Dec. 179; *Estate of Wiley,* 138 Cal. 301, 71 Pac. 441; *McLean v. Crow,* 88 Cal. 644, 26 Pac. 596; *Rice v. Inskeep,* 34 Cal. 224, 226.

In *Haub v. Leggett,* 160 Cal. 491, 494, 117 Pac. 556, the effect of such a judgment is well considered, the court saying:

"A judgment in an action against the executor upon a money demand against the estate 'only establishes the claim in the same manner as if it had been allowed by the executor or administrator and a judge.' Code Civ. Proc., sec. 1504. (Sec. 15–615, I. C. A.) The executor must in his accounts 'exhibit all debts which have been presented and allowed.' Sections 1628, 1622. (Section 15–1108, I. C. A.) Any allowed claim so exhibited may be contested by the heirs, and a trial by jury may be demanded thereon. Section 1636 (sections 15–1109, 15–1110, 15–1111, I. C. A.) Upon the settlement of such account the court must make an order for the payment of the debts (section 1647) (Section 15–1128, I. C. A.) and the executor thereupon becomes personally liable to each creditor therefor, and execution may issue against him (section 1649) (Section 15–1130, I. C. A.)

*"These provisions show that an allowed claim against an estate does not attain to the dignity and force of an absolute judgment until, upon the settlement of an account, an order is made directing the executor to pay it. Prior to that time it ranks as an acknowledged debt, but it is still subject to contest by the heirs.* It has not become conclusive in favor of the claimant. The decisions of this court have always recognized the inconclusive effect of an allowed claim." (Emphasis and I. C. A. sections inserted.)

From these statutes and authorities it appears that the so-called judgment, allowing the claim, has not become final but is subject to contest at the time of the settlement of the account of the administratrix. It does not have the dignity of a "final judgment in an action or special proceeding commenced in the court in which the same is rendered"; from which an appeal may be taken to this court. (Sec. 11–201, I. C. A.)

"A judgment, order, or decree, to be final for purposes of an appeal or error, must dispose of the cause, or a distinct branch thereof, as to all the parties, reserving no further questions or direction for future determination. It must finally dispose of the whole subject-matter or be a termination of the particular proceedings or action, leaving nothing to be done but to enforce by execution what has been determined. In other words, a final judgment is one which operated to divest some right in such a manner as to put it beyond the power of the court making the order to place the parties in their original condition after the expiration of the term; that is, it must put the case out of court, and must be final in all matters within the pleadings. An exception to this rule is apparently recognized by some courts with regard to matters distinct from the general subject of litigation. A judgment cannot be regarded as final for the purposes of jurisdiction until entered in a court from which execution can issue. And where some thing more than the mere ministerial execution of the decree as rendered is left to be done, the decree is interlocutory, and not final, even though it settled the equities of the bill."

Section 22, page 860, 2 American Jurisprudence.

Appeals can only be taken from judgments that are final or those from which appeals are specifically provided. (*Blaine County National Bank v. Jones,* 45 Ida. 358, 262 Pac. 509.) No right of appeal is specifically provided for and no method is provided whereby an appeal may be prosecuted from a judgment such as that herein considered. Where it appears from the record that no final judgment was rendered an attempted appeal should be dismissed. (*Thiessen v. Riggs,* 5 Ida. 21, 46 Pac. 829; *Continental & C. Tr. & Sav. Bank v. Werner,* 33 Ida. 764, 198 Pac. 471; *Blaine County Nat. Bank v. Jones, supra; Witty v. Wells,* 39 Ida. 20, 225 Pac. 1020.)

Section 15–1108, I. C. A., provides:

"When required by the court, either upon its own motion or the application of any person interested in the estate, the executor or administrator must render, for the information of the court, an exhibit under oath, showing the amount of money received and expended by him, the amount of all claims presented against the estate and the names of the claimants, and all other matters necessary to show the condition of its affairs."

Section 15–1133, I. C. A., provides for final account as follows:

"At the time designated in the last section, or sooner, if within that time all the property of the estate has been sold, or there are sufficient funds in his hands for the payment of all the debts due by the estate, and the estate be in proper condition to be closed, the executor or administrator must render a final account and pray a settlement of his administration."

Section 15–1115, I. C. A., provides for notice of settlement of any account:

"When any account is rendered for settlement, the court or judge must appoint a day for the settlement thereof; the clerk must thereupon give notice thereof, by causing notices to be posted in at least three public places in the county, setting forth the name of the estate, the executor or administrator, and the day appointed for the settlement of the account, which must be on some day of a term of the court. The court or probate judge may order such further notice to be given as may be proper."

Section 15–1118, I. C. A., provides for exceptions to settlement:

"On the day appointed, or any subsequent day to which the hearing may be postponed by the court, any person interested in the estate may appear and file his exceptions in writing to the account and contest the same." (*Chandler v. Probate Court*, 26 Ida. 173, 141 Pac. 536; *Needham v. Needham*, 34 Ida. 193, 200 Pac. 346.)

Section 15–1119, I. C. A., provides for the hearing of exceptions:

"All matters, including allowed claims not passed upon on the settlement of any former account, or on rendering an exhibit, or on making a decree of sale, may be contested by the heirs for cause shown. The hearings and allegations of the respective parties may be postponed from time to time, when necessary, and the court may appoint one or more referees to examine the accounts and make report thereon, subject to confirmation; and may allow a reasonable compensation to the referees, to be paid out of the estate of the decedent."

Section 11–401, I. C. A., provides for an appeal from the order of the probate court settling an account:

"An appeal may be taken to the district court of the county from a judgment, or order of the probate court in probate matters; . . . .

5. Settling an account of an executor, administrator, or guardian. . . . . "

No intervention by heirs or devisees or interested parties in a suit by an administratrix to establish her claim as a creditor is provided for by statute. The only manner provided by statute for interested parties to contest is upon or at the time of the settlement of an account of the administratrix, at which time interested parties may contest and may appeal from the order of the probate judge settling the account. Certainly it was not intended that heirs or devisees could intervene in a suit for the allowance of a claim, thereafter prosecute an appeal from an adverse ruling, and thereafter again contest the payment of the claim by exceptions to the settlement of the accounts of the administratrix, followed by

a further appeal from an adverse ruling, namely an order settling the account. To hold otherwise than that the appeal should be dismissed against all appellants, the administratrix in the instant case would be required to pay in part out of her share of the estate, attorneys fees and costs in carrying on the litigation, a contest of her own claim. It appears that the intervention of the claimed heirs of the estate was premature or improper and the appeal should be dismissed.

ON PETITION FOR REHEARING.

(Jan. 3, 1941.)

AILSHIE, C. J.— A petition for rehearing has been filed, urging that we erred in not finding that appellants were prejudiced by the trial court's failure to instruct the jury before the arguments of counsel were made. We have re-examined the record and briefs on that assignment and are satisfied no error was committed and that appellants were in no way prejudiced by the action of the court.

The failure of the opinion to mention the written request, to have the instructions given before arguments, is due to the failure of counsel to give the folio reference as required by our rules (Rule 42; *State v. Cox,* 55 Ida. 694, 700, 46 Pac. (2d) 1093). Further examination of the record discloses a document that was filed in the trial court entitled "Request *for Special Verdict.*" This paper requests the court to submit to the jury *two special interrogatories* and concludes as follows:

"And the defendant further requests that the court instruct the jury in said cause prior to argument by counsel for any of the parties."

The record does not show that this request was ever called to the attention of the trial judge, nor does it show any ruling thereon. If it was of the importance to appellant that counsel now urges, it should have been brought to the court's attention before or when the judge directed counsel to "proceed with the argument."

The clerical error in writing the figures $496.04 instead of $500, as intended, will be corrected in the opinion before the *remittitur* goes down.

Petition denied.

Givens, Morgan and Holden, JJ., concur.

Budge, J., took no part.