## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 40348

ASHTON URBAN RENEWAL AGENCY, an
independent public body corporate and
politic,

    Petitioner-Respondent,

v.

ASHTON MEMORIAL, INC.,  an Idaho
corporation, doing business as ASHTON
LIVING CENTER,

    Respondent-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Idaho Falls, August 2013 Term

2013 Opinion No. 104

Filed:  October 11, 2013

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Seventh Judicial District, State of Idaho,
Fremont County.  Hon. Gregory W. Moeller, District Judge.

District court decision that Ashton Urban Renewal Agency has standing,
<u>affirmed.</u>

Rigby, Andrus & Rigby, Chtd., Rexburg, for appellants.  Hyrum D. Erickson
argued.

Elam & Burke, P.A., Boise, for respondent.  Meghan S. Conrad argued.

---

BURDICK, Chief Justice

    This is an appeal of the Fremont County district court's decision holding that Ashton
Urban Renewal Agency (AURA) has standing to challenge a property tax exemption granted to
Ashton Memorial, Inc., a corporation with real and personal property located within AURA's
revenue allocation area. The issue before the Court is whether AURA is a "person aggrieved"
under I.C. § 63-511, and therefore, may appeal the grant of the exemption to the Idaho Board of
Tax Appeals (BTA).

### I. FACTUAL AND PROCEDURAL BACKGROUND

    AURA is an urban renewal agency organized pursuant to the Idaho Urban Renewal Law
of 1965, I.C. §§ 50-2001, *et seq.* and the Local Economic Development Act, I.C. §§ 50-2901, *et*

1

*seq.* The district court provided the following explanation of how an urban renewal agency organized under these statutes is funded:

> Urban renewal agencies are funded through revenue allocation, which allows them to pay for projects and improvements within designated areas. After a geographic boundary is set for the revenue allocation area, the County Assessor freezes the assessed value of the real property within the area, with the "frozen value" called the base. *See* I.C. § 50-2903(4). The actions of the urban renewal agency and the investments of other parties increase the property values in the area. The increase over the base is called the increment value.[1] *See* I.C. § 2903(10). The property taxes then collected on the increment go to the agency in the manner set forth in I.C. § 50-2908. This is the primary revenue stream for an urban renewal agency since it is does not have the authority to independently levy property taxes.

The properties at issue in this matter are located within the specified urban renewal area for ARUA and are owned by Ashton Memorial. On January 19, 2011, Ashton Memorial filed for tax exemptions on these properties with the Fremont County Board of Equalization (BOE). AURA opposed Aston Memorial's requests for exemptions. On July 8, 2011, the Fremont County Commissioners, sitting as the BOE, voted to approve a 100% tax exemption for Ashton Memorial's real and personal property pursuant to I.C. § 63-602(c).

Harlan Mann, a consultant to AURA who is responsible for tracking the assessed values of properties within AURA's revenue allocation area and the levy rates of the overlapping taxing districts, made the following calculations as to the impact Ashton Memorial's tax exemption would have on AURA:

(1) The 2011 estimated assessment of Ashton Memorial's property was $2,781,023.

(2) The 2011 net levy rate for AURA's revenue allocation area is 0.015633479.

(3) If Ashton Memorial had not received an exemption, AURA would have received $43,477 in revenue from taxes levied on Ashton Memorial for the 2011 fiscal year.

(4) The incremental value for 2011 for the entire Ashton Urban Renewal Plan area, valuing the exempt property at zero, is $2,270,027. The 2011 revenue that will be generated from the taxable properties, and will be received by the Agency in its 2012 fiscal year, is $35,488 [$2,270,027 x 0.015633479].

Based on Mann's calculations, which have not been controverted and the district court accepted as fact, AURA's anticipated property tax revenue decreased by $43,477 or 55% due to the grant of an exemption to Ashton Memorial.

---

[1] It should be noted that the great majority of the assessed value of the real property and all of the personal property in AURA's revenue allocation district is allocated to the increment, not the base.

On August 9, 2011, AURA filed a timely appeal challenging the grant of exemption on the grounds that the property did not qualify for the property tax exemption. Ashton Memorial filed an answer and notice of appearance contending that AURA lacked standing to challenge the exemption. The BTA entered its Final Order Dismissing Appeals on November 29, 2011, in which it ruled that AURA lacked standing to appeal the grant of exemption because AURA was not a person aggrieved under I.C. § 63-511. The BTA also denied AURA's subsequent request for reconsideration. AURA then filed a timely petition for judicial review with the district court. On August 10, 2012, the district court issued its Decision on Review reversing the BTA's decision and remanding the matter to the BTA for consideration on the merits. Ashton Memorial appealed this decision pursuant to I.A.R. 11(a)(2) and filed its Notice of Appeal on September 18, 2012.

## II. ANALYSIS

Ashton Memorial raises two issues on appeal: (1) whether AURA has standing to challenge the BOE's decision to grant a tax exemption to Ashton Memorial's property located within AURA's revenue allocation area, and (2) whether the district court had jurisdiction to consider AURA's appeal of the BTA's decision.

**A. AURA is a person aggrieved under I.C. § 63-511.**

Idaho Code section 63-511(1) sets forth the standing requirement for appealing a decision of a county board of equalization: "Such appeal may only be filed by the property owner, the assessor, the state tax commission or by a person aggrieved when he deems such action illegal or prejudicial to the public interest." The BTA held that AURA was not a person aggrieved under this statute. The district court reversed the BTA's decision and held that AURA had a pecuniary interest in whether Ashton Memorial was granted a tax exemption, and so, was a person aggrieved by the BOE's decision. The district court also concluded that denying AURA standing to challenge the grant of the tax exemption to Ashton Memorial violates AURA's due process and equal protection rights. Ashton Memorial challenges both of these decisions on appeal. Because we hold that AURA does have standing under I.C. § 63-511(1), there is no need to address whether the denial of standing would violate AURA's due process and equal protection rights.

AURA has standing to challenge the BOE's decision if it is a "person aggrieved" under I.C. § 63-511(1). The construction and application of a statute are pure questions of law over

3

which we exercise free review. *Canyon Cnty. Bd. of Equalization v. Amalgamated Sugar Co., LLC*, 143 Idaho 58, 60, 137 P.3d 445, 447 (2006). This Court has never addressed the meaning of "person aggrieved" within the context of this statute. However, while interpreting a statute similar to I.C. § 63-511,[2] this Court stated, "Broadly speaking, a party or person is aggrieved by a decision when, and only when, it operates directly and injuriously upon his personal, pecuniary, or property rights." *Application of Fernan Lake Vill.*, 80 Idaho 412, 415, 331 P.2d 278, 279 (1958) (quoting 4 C.J.S. Appeal and Error § 183 b, pp. 559 and 561). This Court has more succinctly stated the test as to whether a party is aggrieved as follows: "Would the party have had the thing if the erroneous judgment had not been entered? If the answer be yea, he is a party aggrieved." *State v. Eves*, 6 Idaho 144, 148, 53 P. 543, 544 (1898); *Dowd v. Dowd's Estate*, 62 Idaho 157, 108 P.2d 287, 288 (1940); *Washington Cnty. Abstract Co. v. Stewart*, 9 Idaho 376, 381, 74 P. 955, 957 (1903).

In *Fernan Lake,* the city of Coeur d'Alene appealed the acceptance of Fernan Lake Village's application for incorporation into Coeur d'Alene, arguing that the land on which the village resided had never been considered a "village" and that the boundaries were "irregular, bizarre, and fantastic." *Fernan Lake*, 80 Idaho at 414, 331 P.2d at 279. This Court concluded that Coeur d'Alene was not a person aggrieved because the Court could not discern from the record how the village's irregular boundaries aggrieved the city and the "objection that the incorporation of the village would hamper the future growth of the city is speculative and based upon future possibilities." *Id.* Thus, a person is aggrieved by an order when the order affects his or her present personal, pecuniary, or property interest. *See id.* at 415, 331 P.2d at 280. The effect on the person's interest must be more than a possible or remote consequence of the order. *See id.*

Ashton Memorial claims that AURA is not a person aggrieved by the BOE's grant of exemption because AURA only has an interest in taxes that are actually levied; AURA has no

---

[2] This Court was interpreting I.C. § 31-1509, which authorizes appeals from the orders of the board of county commissioners and at the time read as follows:

> Any time within twenty days after the first publication or posting of the statement, as required by section 31-819, an appeal may be taken from any act, order or proceeding of the board, by any person aggrieved thereby, or by any taxpayer of the county when any demand is allowed against the county or when he deems any such act, order or proceeding illegal or prejudicial to the public interests.

*Fernan Lake*, 80 Idaho at 414, 331 P.2d at 279.

4

interest in unlevied taxes. Ashton Memorial further argues that accepting the district court's holding would allow any agency to appeal any taxing authority decision that deprives the agency of expected funds.

To determine whether AURA had an interest that was more than speculative in the taxes levied on Ashton Memorial we look to I.C. § 50-2908, which provides how the tax levy rates are determined in a taxing district and the way the collected funds are distributed. In relevant part this statute states:

> (2) With respect to each such taxing district, the tax rate calculated under subsection (1) of this section shall be applied to the current equalized assessed valuation of all taxable property in the taxing district, including the taxable property in the revenue allocation area. The tax revenues thereby produced shall be allocated as follows:
>
> > (a) To the taxing district shall be allocated and shall be paid by the county treasurer:
> >
> > > (i) All taxes levied by the taxing district or on its behalf on taxable property located within the taxing district but outside the revenue allocation area;
> > >
> > > (ii) A portion of the taxes levied by the taxing district or on its behalf on the taxable property located within the revenue allocation area, which portion is the amount produced by applying the taxing district's tax rate determined under subsection (1) of this section to the equalized assessed valuation, as shown on the base assessment roll, of the taxable property located within the revenue allocation area; and
> > >
> > > (iii) All taxes levied by the taxing district to satisfy obligations specified in subsection (1)(a) through (f) of this section.
> >
> > (b) To the urban renewal agency shall be allocated the balance, if any, of the taxes levied on the taxable property located within the revenue allocation area.

Ashton Memorial argues that AURA has no right to a specific amount of funds because it is only entitled to receive the balance available after the taxing district has received its allocations and that balance may be zero. Ashton Memorial is essentially arguing that in order for AURA to be a person aggrieved by the BOE's decision, the decision must affect AURA's property rights in the due process sense—a person must have already acquired the property or be entitled to it by statute. *See Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 73, 28 P.3d 1006, 1016 (2001) (Procedural due process "is a safeguard of the security of interests that a person has already acquired in specific benefits."). This Court's precedent does not require such a high

standard for a person to be aggrieved by a decision for the purpose of establishing standing pursuant to a statute. As the district court noted, "Even if AURA had no 'property right' to these funds, as BTA concluded, it did have a 'pecuniary' interest."

While AURA may only have a property right to taxes actually levied for the purposes of due process, the allocation of this money to AURA in the absence of the grant of exemption to Ashton Memorial was hardly speculative or remote. Under I.C. § 50-2908, AURA essentially receives all taxes levied at the rate of 0.015633479 on property located within its revenue allocation area, except for the approximately $188 that goes to the taxing district in accordance with § 50-2908(2)(a)(ii). But for the BOE's grant of an exemption to Ashton Memorial, AURA would have received $78,965 in revenue allocation in 2012 instead of $35,488—a 55% decrease in revenue. Ashton Memorial does not dispute these calculations. The grant of an exemption to Ashton Memorial created a very real and concrete loss to AURA's revenue stream. Therefore, we conclude that AURA did have a pecuniary interest in the BOE's decision because, but for that decision, it would have received an additional $43,477 for the 2011 fiscal year.

**B. Ashton Memorial waived the issue of notice by failing to raise it below.**

Ashton Memorial claims that the district court did not have jurisdiction to hear AURA's appeal because AURA did not provide Fremont County with notice of the appeal. Ashton Memorial contends that Fremont County was a party to the proceeding before the BTA and as such, I.R.C.P. 84(b) required AURA to serve the county with notice of the proceeding before the district court. Ashton Memorial did not raise the issue below, but argues that the issue deals with the procedure for perfecting an appeal and so is jurisdictional.

Idaho Code section 63-3812(a) states that appeals from BTA decisions must follow the procedure laid out in I.R.C.P. 84. While this rule does require a petitioner to serve notice on all parties to the agency proceeding that is being appealed, it also states that only the failure to file a petition for judicial review with the district court within the time limits is jurisdictional. I.R.C.P. 84(b), (n). Specifically, Rule 84(n) states: "Failure of a party to timely take any other step in the process for judicial review shall not be deemed jurisdictional, but may be grounds only for such other action or sanction as the district court deems appropriate, which may include dismissal of the petition for review." Because this issue is not jurisdictional and Ashton Memorial did not raise it below, it is not preserved for appeal. *See KEB Enterprises, L.P. v. Smedley*, 140 Idaho

6

746, 752, 101 P.3d 690, 696 (2004) ("This Court's longstanding rule is that it will not consider issues raised for the first time on appeal.").

### III. CONCLUSION

We affirm the district court's decision that AURA has standing to appeal the grant of an exemption to Ashton Memorial. Costs to AURA.

Justices EISMANN, J. JONES, W. JONES and HORTON, **CONCUR.**