[Civ. No. 30637.   Second Dist., Div. Five.   Apr. 1, 1968.]

HENRY VILKIN et al., Plaintiffs and Appellants, v. HAR-
OLD C. SOMMER et al., Defendants and Appellants.

Irmas & Rutter and David Manning Chodos for Plaintiffs
and Appellants.

Frederick J. Kling for Defendants and Appellants.

KAUS, P. J.—Both sides appeal from a judgment which, in
essence, declared plaintiffs to be the owners of certain real
property, but awarded a money judgment in the net amount
of $9,176.06 to defendants.

On December 20, 1956, defendants owned 160 acres of real property near Lancaster, California, legally described as the "South half of the North half of Section 9, Township 7 North, Range 11 West, San Bernardino Base & Meridian, County of Los Angeles, State of California."

There was a trust deed of record against the property which had been executed by defendants in favor of Warren C. Laird and May Laird to secure payment of an obligation of $36,000.

The 160-acre parcel consisted of four 40-acre parcels. Certain facts, relevant to valuation, are undisputed: parcels 1 and 2 were under cultivation, irrigated, and abutted a paved road. Parcel 1 contained a farmhouse, outbuildings, farming equipment, and a well. Parcels 3 and 4 were unirrigated, raw desert land and abutted only a dirt road.

On or about December 20, 1956, defendants entered into a written agreement with plaintiffs in which defendants agreed to sell and plaintiffs agreed to purchase the real property for a total price of $128,000 payable as follows: plaintiffs to pay defendants $37,120 in cash, taking the property subject to the first trust deed of $36,000 and executing a second trust deed in favor of defendants in the sum of $54,880.

The second trust deed which plaintiffs executed in favor of defendants contained the following provision:

"There being no default in the note secured hereby beneficiary will cause to be released to record owners, at record owners expense, the lien of this encumbrance on any one of the following parcels upon payment of a sum, plus accrued interest to date of such payment, computed as follows: Parcel #1, $24,000.00; Parcel #2, $16,000.00; Parcel #3, $7,440.00; Parcel #4, $7,440.00.

"Parcel #1, The south half of the south half of the northeast quarter

"Parcel #2, The north half of the south half of the northeast quarter

"Parcel #3, The north half of the south half of the northwest quarter

"Parcel #4, The south half of the south half of the northwest quarter."

The total of the sums designated for each of the parcels thus equals $54,880, the total amount of the obligation under the second trust deed.

As part of the sale, defendants arranged to have the existing first trust deed held by the Lairds reconveyed and in place thereof they executed a new first trust deed in favor of the Lairds also in the amount of $36,000. This new trust deed differed from the one reconveyed only in that it contained a release clause which was, except for the sums involved, identical in language and legal description of the four parcels, to the clause in the second trust deed. The dollar amounts designated in the release clause in the first trust deed, however, were as follows: parcel #1, $12,000; parcel #2, $12,000; parcel #3, $6,000; parcel #4, $6,000. Again, the sums for the individual parcels equaled the total indebtedness, of $36,000, under the trust deed.

The sale was consummated and title to the real property was conveyed from defendants to plaintiffs on February 3, 1957.

Between February 1957 and July 1961, plaintiffs paid to the Lairds the regular semi-annual installments of principal and interest provided for in the note secured by the first trust deed. The payments on account of principal during this period totaled $11,280. During the same period, plaintiffs paid defendants the regular semi-annual installments of principal and interest provided for in the note secured by the second trust deed. The payments on account of principal totaled $15,813.65.

In July 1961, plaintiffs made a written demand on the Lairds for a release and reconveyance from the lien of the first trust deed of parcels 3 and 4—a total of 80 acres—and tendered an additional $720 toward principal, bringing total principal payments to $12,000. At the same time, plaintiffs made a written demand on defendants for release and reconveyance of parcels 3 and 4 from the lien of the second trust deed, basing their demand on the aforementioned payments to defendants on account of principal.

The Lairds refused to execute a release or reconveyance and plaintiffs later brought an action for specific performance of the release provision of the first trust deed.

Defendants, after threat of suit and on advice of their then attorney, on August 29, 1961, executed and delivered to United California Bank, trustee under the second trust deed, a request for release and reconveyance to plaintiffs of certain property covered by that deed. It was the intention of defendants and the belief of plaintiffs that the request for partial reconveyance would accomplish a release from the lien of the

second trust deed of parcels 3 and 4, comprising a total of 80 acres. In fact the request contained a misdescription of the property which, when acted upon by the United California Bank, resulted in reconveyance to plaintiffs of only a portion of parcels 3 and 4, comprising a total of only 20 acres.

Later plaintiffs failed to make the semi-annual payments required under the second trust deed. Defendants thereupon instituted default proceedings under the second trust deed and purchased the property at the trustee's sale held on December 18, 1962, thereby acquiring not only parcels 1 and 2, but also the 60 acres of parcels 3 and 4 which had been omitted from the partial reconveyance to plaintiffs.

About September 1963, plaintiffs made demand upon defendants for reconveyance of these 60 acres. Defendants refused, asserting that they never had been legally required to make the partial reconveyance because the release clause of the second trust deed, in addition to the regular semi-annual payments of principal, required lump-sum payments by plaintiffs, in the amounts designated for each of the four parcels.

On October 4, 1963, defendants paid Mrs. Laird[1] a total of $8,828.—of which $6,250 represented principal and $2,578 accrued interest on the first trust deed. The trial court found that this payment was for preservation and protection of the entire 160 acres, including the 80 acres comprising parcels 3 and 4. At the time defendants made this payment they knew of plaintiffs' pending suit against Mrs. Laird for specific performance of the release clause in the first trust deed.

On October 4, 1963, defendants paid to the Los Angeles County tax collector the sum of $644.06 which was attributable to real property taxes on parcels 3 and 4. The trial court found this expenditure constituted an expense reasonably incurred by defendants for preservation and protection of the property. Interest on this sum from the date of payment to the date the present action was filed was $4.00.

Plaintiffs filed the present action on October 31, 1963, seeking reformation of the partial reconveyance to include all of parcels 3 and 4. The clerical error misdescribing the property in the partial reconveyance was stipulated to in the pretrial conference order. Defendants, however, alleged by way of counterclaim the failure of plaintiffs to make the lump-sum payments to which defendants claimed they were entitled before they were required to execute any reconveyance under the release clause of the second trust deed, and sought to have

---

[1]Mrs. Laird's husband had died and she had succeeded to his interest in the first trust deed.

their partial reconveyance to plaintiffs set aside on the ground of mistake.

In November 1964, Mrs. Laird executed and delivered to plaintiffs a request for partial reconveyance by means of which parcels 3 and 4 were released from the lien of the first trust deed. Thereafter plaintiffs filed a dismissal with prejudice of their action for specific performance against Mrs. Laird.

Plaintiffs' present action against defendants went to trial on February 2, 1965, on the issue of whether the second trust deed did or did not require lump-sum payments by plaintiffs to defendants as a condition precedent to partial reconveyance under the release clause. After both sides had presented all of their evidence a mistrial was declared. Thereafter supplemental pleadings were filed. The matter was then submitted to a different judge on the transcript of the first trial.

The court found that it was the intention of the parties that plaintiffs would be entitled to partial reconveyances under the release clause when principal payments made on account of the indebtedness secured by the second trust deed aggregated the sums set forth therein for the release of each parcel, that credit toward these aggregate amounts was to be given for the regular semi-annual payments required on account of principal, and that it was not the intention of the parties that additional lump-sum payments be made before the release clause became operative.

The judgment decreed the reformation of the partial reconveyance sought by plaintiffs and further awarded judgment against defendants in the sum of $300 (Civ. Code, § 2941.) In addition, defendants were awarded judgment against plaintiffs in the sum of $9,476.06—a net recovery of $9,176.06 after offset of the $300. This amount of $9,476.06 represents the sums defendants had paid Mrs. Laird on the first trust deed, as well as the back taxes which defendants had paid on parcels 3 and 4.

Plaintiffs appeal from so much of the judgment as would reimburse defendants for the payment to Mrs Laird—$8,828.[2] Defendants, in turn, seek reversal of that part of the judgment decreeing reformation of the partial reconveyance.

### Decree Ordering Reformation

Defendants do not complain—and could not success-

[2]Plaintiffs concede correctness of so much of the money judgment as reimburses defendants for their payment of property taxes on parcels 3 and 4.

fully—[3]. that there was insubstantial evidence to support the trial court's finding that the parties did not intend that plaintiffs make lump-sum payments as a precondition to the partial reconveyance. Rather they argue that the weight of the evidence supports the contrary conclusion.

Defendants claim that this court has the power to reverse although there is substantial evidence to support the findings in plaintiffs' favor, because the trial court which made them on the basis of a written transcript was in no better position than this court to appraise the credibility of the witnesses. That point was so thoroughly canvassed in *Tupman* v. *Haberkern*, 208 Cal. 256, 261-263 [280 P. 970] that any further discussion is unnecessary.

### *Money Judgment in Favor of Defendants*

The record below is silent as to the basis for the trial court's ruling that defendants were entitled to reimbursement of the monies paid to Mrs. Laird in October 1963, and it is impossible for this court to find any justification for that ruling.

When the payment was made by defendants, plaintiffs' interests in the various parcels were as follows: the sale under the second trust deed destroyed any interest plaintiffs had in parcels 1 and 2. It relieved them of any further obligation to perform any promise that had been secured by that instrument. It will be remembered that as far as payments on the note securing the first trust deed are concerned, plaintiffs never assumed them, but merely took subject to that security. With respect to parcels 3 and 4 plaintiffs either did or did not have the right that Mrs. Laird execute a reconveyance of the whole of those parcels and that defendants reconvey the remaining 60 acres. If plaintiffs had those rights at the time of the payment then "equity will treat the subject matter as to collateral consequences and incidents in the same manner as if the final acts contemplated by the parties had been executed exactly as they ought to have been." (*Daggett* v. *Rankin*, 31 Cal. 321, 327.)[4]

In discussing the correctness of the court's ruling two sal-

---

[3]Much of the evidence below was extrinsic and conflicting. (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

[4]We have searched the record for any indication in the pleadings or the pretrial conference that defendants' payment to Mrs. Laird was an issue in the litigation. We have found none, but since plaintiffs do not raise the point, we assume that they concede that the issue was tried by consent.

ient facts which defendants gloss over must be pointed up: 1. the payment to Mrs. Laird was on account of a debt which defendants owed. 2. That debt was secured by a trust deed which constituted a lien on property which they unquestionably owned—parcels 1 and 2—and on property which they claimed to own—parcels 3 and 4. Thus when they made the payment, whatever the eventual outcome of their differences with plaintiffs, they were bound to reap the full benefit thereof, save in one unlikely event: that plaintiffs would ultimately prevail against defendants but not against Mrs. Laird.

It follows from these observations that the ruling cannot be justified on any theory of restitution or subrogation. Plaintiffs were not unjustly enriched. As things turned out every penny defendants paid reduced their own debt. Subrogation is inapplicable, because even if the payment put defendants in Mrs. Laird's shoes, she was not a creditor of plaintiffs, who had merely taken subject to her security.

Defendants advance the following argument: ''If the [plaintiffs] had a good claim against Mrs. Laird then they should have proceeded in such manner as to protect their position. They did not. They left the protection of their position to the [defendants]. The [defendants] were forced to make the payments in the face of the threatened action by the holder of the first. . . .''

The fallacy here is simply this: if plaintiffs had a good claim against Mrs. Laird, the payment was quite unnecessary to protect it. They were entitled to a reconveyance of the first deed of trust with respect to parcels 3 and 4. If plaintiffs did not have a good claim against Mrs. Laird, they had no reason in the world to pay any part of a debt they did not owe which was secured by property they did not own.

Finally defendants say that when the payment was made the specific performance action between plaintiffs and Mrs. Laird was still pending and its outcome in doubt. Thus there was, at the time, a possibility that plaintiffs might prevail against defendants on their interpretation of the release clause in the second trust deed, but lose against Mrs. Laird. In such an event plaintiffs would be the owners of parcels 3 and 4, but would have their title burdened with Mrs. Laird's encumbrance. Therefore—the argument goes—when the payment was made it was of some potential advantage to plaintiffs.

We know of no rule of law or equity which entitles a litigant who has made a payment from which he has received the

full benefit and which at the time of payment just might have benefited his opponent—but in actuality did not—to recover the payment from the opponent. The fact that defendants cite no authority for their proposition supports us in our belief that none exists.

What has been said so far disposes of defendants' arguments to the effect that the trial court erred in refusing to set aside, on the ground of mistake, the partial reconveyance to 20 acres which they made when first requested to reconvey all of parcels 3 and 4. If the judgment reforming that reconveyance to contain all of both parcels is correct—as it is—any setting aside of the partial reconveyance would be fatally inconsistent with it.

The judgment is modified by striking therefrom the figure "$9,476.06" appearing on line 14 of page 4 of the judgment and substituting therefor the figure "$648.06" and by striking further the figure "$9,176.06" appearing on line 16 of said page 4 and substituting therefor the sum of "$348.06," said sum being the net recovery in favor of defendants and against plaintiffs, arrived at by deducting the sum of $300, adjudged to plaintiffs pursuant to the provisions of section 2941 of the Civil Code from the sum of $648.06, the taxes, plus interest, paid by defendants.

As so modified the judgment is affirmed.

Stephens, J., and Aiso, J. pro tem.,* concurred.

A petition for a rehearing was denied April 24, 1968.

*Assigned by the Chairman of the Judicial Council.